IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| SALZGITTER MANNESMANN INTERNATIONAL (USA) INC., | ) ) ) | |
| s | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.:  2:07cv764-MHT |
| SOUTHEASTERN STUD & COMPONENTS, INC., | ) ) ) | |
| Defendant. | ) ) | |

## AMENDED COMPLAINT

For its amended complaint against defendant Southeastern Stud & Components, Inc. ("Southeastern Stud"), in accordance with the Order of this Court dated September 11, 2007, plaintiff Salzgitter Mannesmann International (USA) Inc. ("SMI") states as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff SMI, a member of the Salzgitter Group, is one of the leading distributors of steel products in the United States.  SMI is headquartered in, and has its principal place of business in, Houston, Texas.  SMI was incorporated by the State of Delaware, and is incorporated by no other state.

2.     Defendant Southeastern Stud is a manufacturer and distributor of light gauge steel framing, and is headquartered and has its principal place of business in Montgomery, Alabama.   Southeastern Stud is incorporated by the State of Alabama and, upon information and belief, no other state.

3.     This Court has subject matter jurisdiction over this action pursuant to, *inter alia,* 28 U.S.C. § 1332, as the matter in controversy—open account and breach of contract related to purchase orders for steel and steel products—exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because, *inter alia,* upon information and belief, defendant Southeastern Stud resides in this district and is subject to personal jurisdiction in this district.

## STATEMENT OF FACTS

5.     Beginning in late 2006, Southeastern Stud and SMI entered into a series of contracts, the terms and conditions of which are evidenced by invoices and "Terms and Conditions of Sale" attached hereto, whereby Southeastern Stud ordered certain steel products from SMI and SMI delivered certain steel products to Southeastern Stud in accordance with directions provided by Southeastern Stud.

6.     On or about December 15, 2006, as evidenced by Invoice No. 24446, a copy of which is attached hereto as Exhibit A, Southeastern Stud ordered and

B CCH 757774 v1
2907276-000001 9/11/2007

SMI delivered 253,443 pounds of prime hot dipped galvanized flat rolled steel products to Southeastern Stud representatives in New Orleans, Louisiana. The total amount of Invoice No. 24446 was $80,848.35. Southeastern Stud has, to date, paid only $46,387.91 towards this invoice, leaving a balance due of $34,460.44.

7.    On or about December 29, 2006, as evidenced by Invoice No. 24605, a copy of which is attached hereto as Exhibit B, Southeastern Stud ordered and SMI delivered 217,420 pounds of prime hot dipped galvanized flat rolled steel products to Southeastern Stud representatives in New Orleans, Louisiana. The total amount of Invoice No. 24605 was $91,098.82. Southeastern Stud has, to date, paid only $20,000.00 towards this invoice, leaving a balance due of $71,098.82.

8.    On or about January 5, 2007, as evidenced by Invoice No. 24646, a copy of which is attached hereto as Exhibit C, Southeastern Stud ordered and SMI delivered 774,770 pounds of prime hot dipped galvanized flat rolled steel products to Southeastern Stud representatives in New Orleans, Louisiana. The total amount of Invoice No. 24646 was $328,271.23. Southeastern Stud has, to date, not paid any amounts towards this invoice, leaving a balance due of $328,271.23.

9.    Also on or about January 5, 2007, as evidenced by Invoice No. 24648, a copy of which is attached hereto as Exhibit D, Southeastern Stud ordered and SMI delivered 366,430 pounds of prime hot dipped galvanized flat rolled steel products to Southeastern Stud representatives in New Orleans, Louisiana. The

total amount of Invoice No. 24648 was $147,864.17. Southeastern Stud has, to date, not paid any amounts towards this invoice, leaving a balance due of $147,864.17.

10.    On or about January 12, 2007, as evidenced by Invoice No. 24677, a copy of which is attached hereto as Exhibit E, Southeastern Stud ordered and SMI delivered 191,185 pounds of prime hot dipped galvanized flat rolled steel products to Southeastern Stud representatives in New Orleans, Louisiana. The total amount of Invoice No. 24677 was $77,613.83. Southeastern Stud has, to date, not paid any amounts towards this invoice, leaving a balance due of $77,613.83.

11.    On or about February 8, 2007, as evidenced by Invoice No. 24840, a copy of which is attached hereto as Exhibit F, Southeastern Stud ordered and SMI delivered 35,935 pounds of prime hot dipped galvanized flat rolled steel products to Southeastern Stud representatives in New Orleans, Louisiana. The total amount of Invoice No. 24840 was $15,146.73. Southeastern Stud has, to date, not paid any amounts towards this invoice, leaving a balance due of $15,146.73.

12.    On or about April 6, 2007, Southeastern Stud was credited for pricing differentials on contracts in the amount of $6,098.61, as reflected in internal credit memo no. AR 000155, a copy of which is attached hereto as Exhibit G.

13.    On or about April 30, 2007, as evidenced by Invoice No. 25501, a copy of which is attached hereto as Exhibit H, Southeastern Stud ordered

additional steel products from SMI.  The total amount of Invoice No. 25501 was $10,148.97.  Southeastern Stud has, to date, not paid any amounts towards this invoice, leaving a balance due of $10,148.97.

14.    On or about May 8, 2007, as evidenced by Invoice No. 25549, a copy of which is attached hereto as Exhibit I, Southeastern Stud ordered additional steel products from SMI.  The total amount of Invoice No. 25549 was $16,238.88. Southeastern Stud has, to date, not paid any amounts towards this invoice, leaving a balance due of $16,238.88.

15.    In accordance with the contractual agreements between SMI and Southeastern Stud as memorialized in Invoice No. DN24764 dated January 29, 2007, a copy of which is attached hereto as Exhibit J, based on overdue and outstanding amounts due to SMI by Southeastern Stud, SMI debited Southeastern Stud's account for interest at 1% + prime, totaling $4,590.32.

16.    Invoice Nos. 24446, 24605, 24646, 24648, 24677, 24840, 25501, 25549, and DN24764 are collectively referred to herein as the "Invoices" for the orders reflected therein (the "Orders").  The terms and conditions of the Invoices, along with the terms and conditions of internal credit memo no. AR 000155, referenced above, constitute the terms and conditions for the contractual relationship between SMI and Southeastern Stud (collectively, the "Contract").

B CCH 757774 v1
2907276-000001 9/11/2007

17.    Pursuant to the terms and conditions of the Contract, SMI is entitled to recover from Southeastern Stud for shipping and associated expenses related to the Orders and Invoices.

18.    Further, pursuant to the terms and conditions of the Contract, SMI is entitled to an award of reasonable attorneys' fees and other costs associated with enforcing its rights related to the Invoices and Orders.

19.    Based on the Contract between SMI and Southeastern Stud, the total amount due SMI as of May 8, 2007 was $699,334.78.

20.    By letter dated July 5, 2007, counsel for SMI sent a letter to Southeastern Stud advising that the total amount due SMI was $699,334.78, and requesting that Southeastern Stud pay SMI the total amount due.  A copy of the July 5, 2007 letter is attached hereto as Exhibit K.

## COUNT ONE

### Breach of Contract

21.    SMI realleges all previous paragraphs as if set forth fully herein.

22.    SMI and Southeastern Stud entered into a series of Orders and Invoices, referred to collectively herein as the Contract.

23.    At all times, SMI has performed its obligations in accordance with the Contract.

6

24.    Southeastern Stud has breached the terms of the Contract by failing to make payments in accordance with the terms therein.

25.    As a proximate result of said breach, Southeastern Stud is in default.

26.    As a proximate result of said default, SMI has suffered damages.

27.    Pursuant to the terms and conditions of the Contract, SMI is entitled to recover from Southeastern Stud $699,334.78.

28.    Additionally, pursuant to the terms and conditions of the Contract, SMI is entitled to recover from Southeastern Stud for shipping and associated expenses related to the Orders and Invoices.

29.    In addition, pursuant to the terms and conditions of the Contract, SMI is entitled to recover interest and all costs and expenses, including attorneys' fees, associated with enforcing the terms of the Orders and Invoices.

WHEREFORE, SMI demands judgment against Southeastern Stud in the amount of $699,334.78, exclusive of shipping expenses, interest, costs, and attorneys' fees, and such other, further, or different relief to which SMI is entitled.

 s/ J. Forrest Hinton
    J. FORREST HINTON
ASB-3744-N47J

 / Christopher C. Haug
    CHRISTOPHER C. HAUG
ASB-9226-E64H

Attorneys for Plaintiff Salzgitter
Mannesmann International (USA) Inc.

7

OF COUNSEL:

Baker, Donelson, Bearman,
   Caldwell & Berkowitz, P.C.
Wachovia Tower
420 N. 20th Street, Ste. 1600
Birmingham, AL 35203
(205) 328-0480

## CERTIFICATE OF SERVICE

     I hereby certify that on September 12, 2007, the foregoing has been served upon the following counsel of record via Certified, Return Receipt, Postage Paid U.S. Mail:

Southeastern Stud & Components, Inc.
c/o Mr. Kennon W. Whaley, Sr.
Registered Agent
4542 Baldwin Avenue
Montgomery, Alabama 36108

                            s/ Christopher C. Haug
                               Of Counsel

# EXHIBIT A

# EXHIBIT A



**SALZGITTER MANNESMANN INTERNATIONAL**

A Member of the Salzgitter Group

## INVOICE

**Salzgitter Mannesmann International (USA), Inc.**
1770 St. James Place. Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| Invoice No | 24446 |
|---|---|
| Date | 12/15/06 |
| Due Date | 1/14/07 |
| Order No | SCH-07076 |

Page     1

| BILL TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>4542 Baldwin Ave.<br>Montgomery, AL 36108 | Southeastern Stud & Components<br>CPU @ EMPIRE STEVEDORING<br>NEW ORLEANS, LA |

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | VESSEL |
|---|---|---|---|
| 012306-1 | SCH-07076 | 30 days from date of invoice | VESSEL   AFRICAN HAWK |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC -loaded truck Empire Stevedoring, freight collect, according to UCC terms and conditions (uniform commercial code). Load out fee paid. | | | | | | |
| | Prime HDG, ASTM A 653, Grade 50, G-60 coating, zero spanngle, skin passed, chem treat dry, 20" ID, I.D., C/W 14-23000 LBS. | | | | | | |
| 01 | .0540" min x 48.375" | 0.00 | 14 | 114.960 | 253,443 | 31.90 | 80,848.35 |
| | DOCK RECEIPT NO.S 8-14 | | | | | | |
| **TOTAL** | | 0.00 | 14 | 114.960 | 253,443 | | $80,848.35 |

*6 0,848.35*

**PLEASE REMIT TO:**

LOCKBOX REMITTANCE ADDRESS:

SALZGITTER MANNESMANN
INTERNATIONAL (USA) INC.
P.O. Box 3107
Carol Stream, IL 60132-3107

WIRE TRANSFERS:

BANK NAME: SOCIETE GENERALE
ACCOUNT #: 189383
ABA #  026004226
ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC

S0013899

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE, INCLUDING ALL REMITTANCES. MILL WEIGHTS ARE FINAL. ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE. NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

## TERMS AND CONDITIONS OF SALE

( These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1. **TERMS PARAMOUNT**: The contract between Purchaser and Seller shall be solely as defined hereby together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2. **WARRANTY**: SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS. THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3. **QUANTITY**: Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4. **PARTIAL SHIPMENTS**: Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5. **RISK OF LOSS**: Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6. **IMPORT DUTY AND TAXES**: If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

   **Cost of Insurance and Transportation**: If the contract provides that Seller shall pay insurance and transportation costs, there shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

7. **DELAY IN OR NON-SHIPMENT**: If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

   (a)   Seller shall not be liable therefore and,

   (b)   Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9. **DEVIATION**: If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and/or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10. **CLAIMS**: (a) Shortages—All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

    (b) Damaged or Defective Material–All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

    All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

    In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

    In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for Internal sweating on wrapped steel Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11. **SELLER'S REMEDIES**: In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12. **PURCHASER'S REMEDIES**: Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13. INTEREST DUE ON LATE PAYMENT: If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS: Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. SECURITY INTEREST: Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16. MODIFICATIONS: The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. NON-WAIVER OF TERMS: failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. REPRESENTATIONS: Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. ASSIGNMENT: This contract may not be assigned without the written agreement of the parties.

20. SEVERABILITY: Any legally invalid provision hereof shall be considered serverable.

21. FORCE MAJEURE: Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. GOVERNING LAW: The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23. ARBITRATION: Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT B

# EXHIBIT B


## SALZGITTER MANNESMANN INTERNATIONAL
A Member of the Salzgitter Group

### INVOICE
**Salzgitter Mannesmann International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston, TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| Invoice No. | 24605 |
|---|---|
| Date | 12/29/06 |
| Due Date | 1/28/07 |
| Order No. | SCH-07122 |

Page 1

**BILL TO:**

Southeastern Stud & Components
4542 Baldwin Ave.
Montgomery, AL 36108

**SHIP TO:**

Southeastern Stud & Components
CPU @ EMPIRE STEVEDORING
NEW ORLEANS, LA

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | VESSEL | |
|---|---|---|---|---|
| 1414 | SCH-07122 | 30 days from date of invoice | VESSEL | MYRON N |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC -loaded truck, Empire Stevedoring (LA) Inc. freight collect, according to UCC terms and conditions (Uniform Commercial Code). Load out fee paid. | | | | | | |
| | Prime HDG, ASTM A 653, Cs Type B G-40 coating, zero spangle, chem treat dry, 20" ID, I.D., C/W 14-23000 LBS.  Seaworthy package. | | | | | | |
| 02 | .0435" min x 48" | 0.00 | 10 | 98.620 | 217,420 | 41.90 | 91,098.82 |
| | DOCK RECEIPTS: 1, 2, 3, 4, 5 | | | | | | |
| **TOTAL** | | 0.00 | 10 | 98.620 | 217,420 | | $91,098.82 |

*71,098.82* (handwritten)

**PLEASE REMIT TO:**

LOCKBOX REMITTANCE ADDRESS

SALZGITTER MANNESMANN
INTERNATIONAL (USA), INC.
P.O. Box 3107
Carol Stream, IL 60132-3107

WIRE TRANSFERS:

BANK NAME: SOCIETE GENERALE
ACCOUNT #: 189383
ABA #: 026004226
ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC

*S0014010*

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE, INCLUDING ALL REMITTANCES.  MILL WEIGHTS ARE FINAL  ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE  NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

## TERMS AND CONDITIONS OF SALE

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1. **TERMS PARAMOUNT**: The contract between Purchaser and Seller shall be solely as defined hereby together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice or objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2. **WARRANTY**: SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS. THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3. **QUANTITY**: Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4. **PARTIAL SHIPMENTS**: Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5. **RISK OF LOSS**: Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from and after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6. **IMPORT DUTY AND TAXES**: If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

**Cost of Insurance and Transportation**: If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8. **DELAY IN OR NON-SHIPMENT**: If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

   (a) Seller shall not be liable therefore and,

   (b) Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9. **DEVIATION**: If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated in the accepted contract, without prejudice or liability to the Seller.

10. **CLAIMS**: (a) Shortages - All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

    (b) Damaged or Defective Material--All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

    All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

    In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

    In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for Internal sweating on wrapped steel. Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11. **SELLER'S REMEDIES**: In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12. **PURCHASER'S REMEDIES**: Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13  INTEREST DUE ON LATE PAYMENT: If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14  SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS: Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

It at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15  SECURITY INTEREST: Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16  MODIFICATIONS: The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17  NON-WAIVER OF TERMS: failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18  REPRESENTATIONS: Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19  ASSIGNMENT: This contract may not be assigned without the written agreement of the parties.

20  SEVERABILITY: Any legally invalid provision hereof shall be considered severable.

21  FORCE MAJEURE: Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22  GOVERNING LAW: The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23  ARBITRATION: Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT C

# EXHIBIT C



## SALZGITTER MANNESMANN INTERNATIONAL

A Member of the Salzgitter Group

## INVOICE

**Salzgitter Mannesmann
International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| Invoice No. | 24646 |
|---|---|
| Date | 1/5/07 |
| Due Date | 2/4/07 |
| Order No | SCH-07122 |

Page     1

| BILL TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>4542 Baldwin Ave.<br>Montgomery, AL  36108 | Southeastern Stud & Components<br>CPU @ EMPIRE STEVEDORING<br>NEW ORLEANS, LA |

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | VESSEL | |
|---|---|---|---|---|
| 1414 | SCH-07122 | 30 days from date of invoice | VESSEL | MYRON N |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC -loaded truck, Empire Stevedoring (LA) Inc. freight collect, according to UCC terms and conditions (Uniform Commercial Code). Load out fee paid. | | | | | | |
| | Prime HDG, ASTM A 653, Cs Type B G-40 coating, zero spangle, chem treat dry, 20" ID, I.D., C/W 14-23000 LBS.  Seaworthy package. | | | | | | |
| 01 | .0270" min x 48" | 0.00 | 26 | 254.205 | 560,425 | 42.55 | 238,461.02 |
| 02 | .0435" min x 48" | 0.00 | 10 | 97.225 | 214,344 | 41.90 | 89,810.21 |
| | DOCK RECEIPTS: 11, 12, 13, 14, 15, 16, 17, 17, 18, 20, 21, 22, 23, 6, 7, 8, 9, 10 | | | | | | |
| **TOTAL** | | 0.00 | 36 | 351.430 | 774,770 | | **$328,271.23** |

**PLEASE REMIT TO:**

LOCKBOX REMITTANCE ADDRESS

   SALZGITTER MANNESMANN
   INTERNATIONAL (USA), INC.
   P.O. Box 3107
   Carol Stream, IL 60132-3107

WIRE TRANSFERS:

   BANK NAME  SOCIETE GENERALE
   ACCOUNT #: 189383
   ABA #:  026004226
   ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC.

S0014011

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE, INCLUDING ALL REMITTANCES. MILL WEIGHTS ARE FINAL. ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE. NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

**TERMS AND CONDITIONS OF SALE**

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1   **TERMS PARAMOUNT**: The contract between Purchaser and Seller shall be solely as defined hereby, together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2   **WARRANTY**: SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS. THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3   **QUANTITY**: Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4   **PARTIAL SHIPMENTS**: Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5   **RISK OF LOSS**: Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6   **IMPORT DUTY AND TAXES**: If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

**Cost of Insurance and Transportation**: If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8   **DELAY IN OR NON-SHIPMENT**: If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified.

(a)   Seller shall not be liable therefore and,

(b)   Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9   **DEVIATION**: If after the material has been shipped, its arrival at the destination port is delayed or prevented, or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10   **CLAIMS**: (a) Shortages — All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

(b) Damaged or Defective Material–All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for internal sweating on wrapped steel Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11   **SELLER'S REMEDIES**: In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12   **PURCHASER'S REMEDIES**: Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

**LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** Failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY:** Any legally invalid provision hereof shall be considered severable.

21. **FORCE MAJEURE:** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT D

# EXHIBIT D



# SALZGITTER MANNESMANN INTERNATIONAL
### A Member of the Salzgitter Group

# INVOICE

**Salzgitter Mannesmann International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone  (713) 386-7900
Fax  (713) 965-9330

| Invoice No | 24648 |
|---|---|
| Date | 1/5/07 |
| Due Date | 2/4/07 |
| Order No | SCH-07151 |

Page    1

**BILL TO:**

Southeastern Stud & Components
4542 Baldwin Ave.
Montgomery, AL  36108

**SHIP TO:**

Southeastern Stud & Components
CPU @ PACORINI USA
NEW ORLEANS, LA

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | VESSEL |
|---|---|---|---|
| 1496 | SCH-07151 | 30 days from date of invoice | VESSEL   TOP RICH |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC -loaded truck, Pacorini USA Inc. freight collect,  according to UCC terms and conditions (Uniform Commercial Code).  Load out fee paid. | | | | | | |
| | Prime HDG, ASTM A 653, Cs Type B, item 1 G-30, item 2 G-40 coating, min spangle, chem treat dry, 20" ID, I.D., C/W 14-23000 LBS.   Seaworthy package | | | | | | |
| 01 | .0270" min x 48" | 0.00 | 6 | 59.990 | 132,255 | 40.80 | 53,960.10 |
| 02 | .0435" min x 48" | 0.00 | 12 | 106.220 | 234,175 | 40.10 | 93,904.07 |
| | DOCK RECEIPTS: 88293, 88284, 88285, 88283, 88278, 88250, 88251, 88260, 88261 | | | | | | |

| TOTAL | 0.00 | 18 | 166.210 | 366,430 | | $147,864.17 |
|---|---|---|---|---|---|---|

**PLEASE REMIT TO:**

LOCKBOX REMITTANCE ADDRESS:

SALZGITTER MANNESMANN
INTERNATIONAL (USA), INC.
P.O. Box 3107
Carol Stream, IL 60132-3107

WIRE TRANSFERS:

BANK NAME: SOCIETE GENERALE
ACCOUNT #:  189383
ABA #:  026004226
ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC.

S0014050

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE  INCLUDING ALL REMITTANCES.  MILL WEIGHTS ARE FINAL  ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE  NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL

TERMS AND CONDITIONS OF SALE

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1. **TERMS PARAMOUNT:** The contract between Purchaser and Seller shall be solely as defined hereby, together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2. **WARRANTY:** SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS. THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3. **QUANTITY:** Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4. **PARTIAL SHIPMENTS:** Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5. **RISK OF LOSS:** Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6. **IMPORT DUTY AND TAXES:** If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

7. **Cost of Insurance and Transportation:** If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8. **DELAY IN OR NON-SHIPMENT:** If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

    (a)    Seller shall not be liable therefore and,

    (b)    Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9. **DEVIATION:** If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10. **CLAIMS:** (a) Shortages - All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

    (b) Damaged or Defective Material–All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

    All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

    In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

    In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for Internal sweating on wrapped steel Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11. **SELLER'S REMEDIES:** In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12. **PURCHASER'S REMEDIES:** Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13. **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material it and when shipped by Seller, such remaining portion of material it and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY:** Any legally invalid provision hereof shall be considered severable.

21. **FORCE MAJEURE:** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT E

# EXHIBIT E



## INVOICE

**Salzgitter Mannesmann International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3498
Phone: (713) 386-7900
Fax: (713) 965-9330

| | |
|---|---|
| Invoice No | 24677 |
| Date | 1/12/07 |
| Due Date | 2/11/07 |
| Order No | SCH-07151 |

Page    1

**BILL TO:**

Southeastern Stud & Components
4542 Baldwin Ave.
Montgomery, AL  36108

**SHIP TO:**

Southeastern Stud & Components
CPU @ PACORINI USA
NEW ORLEANS, LA

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | VESSEL | |
|---|---|---|---|---|
| 1496 | SCH-07151 | 30 days from date of invoice | VESSEL | TOP RICH |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC -loaded truck, Pacorini USA Inc. freight collect, according to UCC terms and conditions (Uniform Commercial Code). Load out fee paid. | | | | | | |
| | Prime HDG, ASTM A 653, Cs Type B, item 1 G-30, item 2 G-40 coating, min spangle, chem treat dry, 20" ID, I.D., C/W 14-23000 LBS.  Seaworthy package | | | | | | |
| 01 | .0270" min x 48" | 0.00 | 7 | 61.480 | 135,540 | 40.80 | 55,300.34 |
| 02 | .0435" min x 48" | 0.00 | 3 | 25.240 | 55,645 | 40.10 | 22,313.49 |
| | DOCK RECEIPTS: 88371, 88369, 88333, 88427, 88448 | | | | | | |

| TOTAL | | 0.00 | 10 | 86.720 | 191,185 | | $77,613.83 |
|---|---|---|---|---|---|---|---|

**PLEASE REMIT TO:**

LOCKBOX REMITTANCE ADDRESS:

SALZGITTER MANNESMANN
INTERNATIONAL (USA), INC.
P.O. Box 3107
Carol Stream, IL 60132-3107

WIRE TRANSFERS:

BANK NAME: SOCIETE GENERALE
ACCOUNT #: 189383
ABA #  026004226
ACCOUNT NAME  SALZGITTER MANNESMANN INTERNATIONAL (USA), INC

S0014058

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE INCLUDING ALL REMITTANCES. MILL WEIGHTS ARE FINAL. ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE. NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

## TERMS AND CONDITIONS OF SALE

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1. **TERMS PARAMOUNT:** The contract between Purchaser and Seller shall be solely as defined hereby, together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice or objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2. **WARRANTY:** SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS. THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3. **QUANTITY:** Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4. **PARTIAL SHIPMENTS:** Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5. **RISK OF LOSS:** Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6. **IMPORT DUTY AND TAXES:** If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

7. **Cost of Insurance and Transportation:** If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8. **DELAY IN OR NON-SHIPMENT:** If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

   (a)  Seller shall not be liable therefore and,

   (b)  Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9. **DEVIATION:** If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10. **CLAIMS:** (a) Shortages - All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

    (b) Damaged or Defective Material–All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

    All claims must be made by registered or certified  mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

    In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

    In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by  Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for internal sweating on wrapped steel. Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11. **SELLER'S REMEDIES:** In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12. **PURCHASER'S REMEDIES:** Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13. **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** Failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY:** Any legally invalid provision hereof shall be considered severable.

21. **FORCE MAJEURE:** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT F

# EXHIBIT F



SALZGITTER
MANNESMANN
INTERNATIONAL

A Member of the Salzgitter Group

## INVOICE

**Salzgitter Mannesmann
International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| Invoice No | 24840 |
|---|---|
| Date | 2/8/07 |
| Due Date | 3/10/07 |
| Order No | SCH-07256 |

Page    1

| BILL TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>4542 Baldwin Ave.<br>Montgomery, AL  36108 | Southeastern Stud & Components<br>CPU @ EMPIRE STEVEDORING<br>NEW ORLEANS, LA |

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | VESSEL |
|---|---|---|---|
| 1414 | SCH-07256 | 30 days from date of invoice | VESSEL   MYRON N |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC -loaded truck, Empire Stevedoring,  according to UCC terms and conditions (Uniform Commercial Code).  Load out fee paid. | | | | | | |
| | Prime HDG, ASTM A 653, Cs Type B,  G-30, coating, min spangle, chem treat dry, 20" ID, I.D., C/W 14-23000 LBS.   Seaworthy package. | | | | | | |
| 01 | .0165" min x 48" | 0.00 | 2 | 16.300 | 35,935 | 42.15 | 15,146.73 |
| | DOCK RECEIPT: 24 | | | | | | |
| **TOTAL** | | 0.00 | 2 | 16.300 | 35,935 | | **$15,146.73** |

PLEASE REMIT TO:

LOCKBOX REMITTANCE ADDRESS:

SALZGITTER MANNESMANN
INTERNATIONAL (USA) INC
P O Box 3107
Carol Stream, IL 60132-3107

WIRE TRANSFERS:

BANK NAME: SOCIETE GENERALE
ACCOUNT #  189383
ABA #  026004226
ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC

S0014233

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE, INCLUDING ALL REMITTANCES. MILL WEIGHTS ARE FINAL. ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE.  NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

## TERMS AND CONDITIONS OF SALE

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1. **TERMS PARAMOUNT**: The contract between Purchaser and Seller shall be solely as defined hereby together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby, and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice or objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2. **WARRANTY**: SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS: THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3. **QUANTITY**: Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4. **PARTIAL SHIPMENTS**: Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5. **RISK OF LOSS**: Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6. **IMPORT DUTY AND TAXES**: If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

**Cost of Insurance and Transportation**: If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8. **DELAY IN OR NON-SHIPMENT**: If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

    (a)   Seller shall not be liable therefore and,

    (b)   Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9. **DEVIATION**: If after the material has been shipped, its arrival at the destination port is delayed or prevented, or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10. **CLAIMS**: (a) Shortages - All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

    (b) Damaged or Defective Material-All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

    All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

    In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

    In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for internal sweating on wrapped steel. Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11. **SELLER'S REMEDIES**: In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12. **PURCHASER'S REMEDIES**: Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13. **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY:** Any legally invalid provision hereof shall be considered severable.

21. **FORCE MAJEURE:** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT G

# EXHIBIT G



**SALZGITTER
MANNESMANN
INTERNATIONAL**

A Member of the Salzgitter Group

**CREDIT MEMO**

**Salzgitter Mannesmann
International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| CREDIT MEMO NO. | AR000155 |
|---|---|
| DATE: | 4/6/2007 |

Page    1

BILL TO:

**Southeastern Stud & Components
4542 Baldwin Ave.
Montgomery, AL  36108**



| YOUR REFERENCE NO. | TERMS | CUSTOMER ID | |
|---|---|---|---|
| | UPON RECEIPT | SOUT-03 | |
| ITEM        DESCRIPTION | | | USD |

****** INTERNAL USE ONLY ******

We hereby write off from your  invoice #24446, SCH-07076  the amount equivalent to

$2.45/CWT x 2,489.23 CWT = $6,098.61

per J.S.

| 1 | Southeastern Stud & Components | CH07076 | 6,098.61 |
|---|---|---|---|

| | TOTAL | $6,098.61 |
|---|---|---|

**PLEASE REMIT TO:**

SALZGITTER MANNESMANN
INTERNATIONAL (USA), INC.
P.O. BOX 3107
CAROL STREAM, IL 60132-3107

WIRE TRANSFERS:
SOCIETE GENERAL
ACCOUNT NO.: 189383
ABA NO.: 026-004-226
ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC.

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE  INVOICE, INCLUDING
ALL REMITTANCES.

## TERMS AND CONDITIONS OF SALE

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1. **TERMS PARAMOUNT:** The contract between Purchaser and Seller shall be solely as defined hereby together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2. **WARRANTY:** SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS. THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3. **QUANTITY:** Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4. **PARTIAL SHIPMENTS:** Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5. **RISK OF LOSS:** Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6. **IMPORT DUTY AND TAXES:** If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

7. **Cost of Insurance and Transportation:** If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8. **DELAY IN OR NON-SHIPMENT:** If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

    (a)   Seller shall not be liable therefore and,

    (b)   Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9. **DEVIATION:** If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10. **CLAIMS:** (a) Shortages - All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

    (b) Damaged or Defective Material--All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

    All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

    In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

    In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for internal sweating on wrapped steel. Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11. **SELLER'S REMEDIES:** In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12. **PURCHASER'S REMEDIES:** Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13. **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY:** Any legally invalid provision hereof shall be considered serverable.

21. **FORCE MAJEURE:** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT H

# EXHIBIT H



## SALZGITTER MANNESMANN INTERNATIONAL

**A Member of the Salzgitter Group**

# INVOICE

**Salzgitter Mannesmann International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 985-9330

| Invoice No. | 25501 |
|---|---|
| Date | 4/30/07 |
| Due Date | 4/30/07 |
| Order No | SCH-07515 |

Page      1

**BILL TO:**

Southeastern Stud & Components
4542 Baldwin Ave.
Montgomery, AL  36108

**SHIP TO:**

Southeastern Stud & Components
CPU @ EMPIRE STEVEDORING
NEW ORLEANS, LA

COPY

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | | VESSEL |
|---|---|---|---|---|
| 12306 | SCH-07515 | Cash in Advance | VESSEL | AFRICAN HAWK 164/06 |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC - loaded truck, Empire Stevedoring, New Orleans, La. per UCC (uniform commercial code) terms and conditions. | | | | | | |
| | Prime hot dipped galvanized coils, CS Type, B,  G-40, min spangle, chem treat dry, 20" ID, max c/w 13,000- 23,000lbs.  Invoicing on actual net weight basis. | | | | | | |
| 01 | .0435" min x 48.375"<br>PO 12306 | 0.00 | 2 | 13.500 | 29,762 | 34.10 | 10,148.97 |
| **TOTAL** | | 0.00 | 2 | 13.500 | 29,762 | | $10,148.97 |

**PLEASE REMIT TO:**

LOCKBOX REMITTANCE ADDRESS:

SALZGITTER MANNESMANN
INTERNATIONAL (USA), INC.
P O  Box 3107
Carol Stream, IL 60132-3107

WIRE TRANSFERS:

BANK NAME: SOCIETE GENERALE
ACCOUNT #:  189383
ABA #:  026004226
ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC.

*S0014832*

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE, INCLUDING ALL REMITTANCES.  MILL WEIGHTS ARE FINAL.  ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE.  NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

## TERMS AND CONDITIONS OF SALE

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1. **TERMS PARAMOUNT:** The contract between Purchaser and Seller shall be solely as defined hereby, together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby, and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2. **WARRANTY:** SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS. THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3. **QUANTITY:** Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4. **PARTIAL SHIPMENTS:** Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5. **RISK OF LOSS:** Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6. **IMPORT DUTY AND TAXES:** If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated, are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

    **Cost of Insurance and Transportation:** If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8. **DELAY IN OR NON-SHIPMENT:** If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

    (a) Seller shall not be liable therefore and,

    (b) Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9. **DEVIATION:** If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10. **CLAIMS:** (a) Shortages—All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

    (b) Damaged or Defective Material—All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

    All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

    In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

    In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for Internal sweating on wrapped steel. Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11. **SELLER'S REMEDIES:** In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12. **PURCHASER'S REMEDIES:** Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13. **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY:** Any legally invalid provision hereof shall be considered severable.

21. **FORCE MAJEURE:** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities); or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT I

# EXHIBIT I



# SALZGITTER MANNESMANN INTERNATIONAL

**A Member of the Salzgitter Group**

## INVOICE

**Salzgitter Mannesmann International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| Invoice No. | 25549 |
|---|---|
| Date | 5/8/07 |
| Due Date | 5/8/07 |
| Order No | SCH-07515 |

Page     1

| BILL TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>4542 Baldwin Ave.<br>Montgomery, AL  36108 | Southeastern Stud & Components<br>CPU @ EMPIRE STEVEDORING<br>NEW ORLEANS, LA |

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | | VESSEL |
|---|---|---|---|---|
| 1496 | SCH-07515 | Cash in Advance | VESSEL | AFRICAN HAWK |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC - LOADED TRUCK, EMPIRE STEVEDORING, NEW ORLEANS, LA. PER UCC (UNIFORM COMMERCIAL CODE) TERMS AND CONDITIONS. | | | | | | |
| | Prime hot dipped galvanized coils, CS Type, B,  G-40, min spangle, chem treat dry, 20" ID, max c/w 13,000- 23,000lbs.  Invoicing on actual net weight basis. | | | | | | |
| | MATERIAL PAID FOR IN ADVANCE | | | | | | |
| 02 | .0435" min x 48"<br>PO 1496 | 0.00 | 2 | 19.590 | 43,189 | 37.60 | 16,238.88 |
| | PARENT ORDER CH-06781 | | | | | | |
| **TOTAL** | | 0.00 | 2 | 19.590 | 43,189 | | **$16,238.88** |

## PLEASE REMIT TO:

LOCKBOX REMITTANCE ADDRESS:

    SALZGITTER MANNESMANN
    INTERNATIONAL (USA), INC.
    P.O. Box 3107
    Carol Stream, IL 60132-3107

WIRE TRANSFERS:

    BANK NAME: SOCIETE GENERALE
    ACCOUNT #:  189383
    ABA #:  026004226
    ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC.

*S0014874*

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE, INCLUDING ALL REMITTANCES.  MILL WEIGHTS ARE FINAL.  ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE.  NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

## TERMS AND CONDITIONS OF SALE

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1. **TERMS PARAMOUNT:** The contract between Purchaser and Seller shall be solely as defined hereby, together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2. **WARRANTY:** SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS; THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3. **QUANTITY:** Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4. **PARTIAL SHIPMENTS:** Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5. **RISK OF LOSS:** Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6. **IMPORT DUTY AND TAXES:** If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

   **Cost of Insurance and Transportation:** If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8. **DELAY IN OR NON-SHIPMENT:** If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

   (a)   Seller shall not be liable therefore and,
   (b)   Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9. **DEVIATION:** If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10. **CLAIMS:** (a) Shortages – All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

    (b) Damaged or Defective Material–All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

    All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

    In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

    In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for Internal sweating on wrapped steel. Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11. **SELLER'S REMEDIES:** In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12. **PURCHASER'S REMEDIES:** Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13. **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY:** Any legally invalid provision hereof shall be considered severable.

21. **FORCE MAJEURE:** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT J

# EXHIBIT J



# SALZGITTER
# MANNESMANN
# INTERNATIONAL

**A Member of the Salzgitter Group**

## DEBIT MEMO

**Salzgitter Mannesmann
International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| Invoice No. | DN24764 |
|---|---|
| Date | 1/29/07 |
| Due Date | 1/29/07 |

Page        1

| BILL TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>4542 Baldwin Ave.<br>Montgomery, AL  36108 | Southeastern Stud & Components<br>LA |

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | VESSEL |
|---|---|---|---|
| 1357 | SCH06188 | Due Upon Receipt | VESSEL    MV AKILI |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/MT | USD |
|---|---|---|---|---|---|---|---|

We debit your account for interest at 1% + Prime per our agreement in Chicago on invoice #23647 dated 9/12/06.

Please see attached...

| **TOTAL** | $4,590.32 |
|---|---|

PLEASE REMIT TO:

LOCKBOX REMITTANCE ADDRESS

   SALZGITTER MANNESMANN
   INTERNATIONAL (USA), INC.
   P.O. Box 3107
   Carol Stream, IL 60132-3107

WIRE TRANSFERS:

   BANK NAME:  SOCIETE GENERALE
   ACCOUNT #:  189383
   ABA #:  026004226
   ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC.

*DMSCH06188*

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE, INCLUDING ALL REMITTANCES.  MILL WEIGHTS ARE FINAL.  ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE   NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

## TERMS AND CONDITIONS OF SALE

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1. **TERMS PARAMOUNT**: The contract between Purchaser and Seller shall be solely as defined hereby together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2. **WARRANTY**: SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS. THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3. **QUANTITY**: Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4. **PARTIAL SHIPMENTS**: Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5. **RISK OF LOSS**: Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6. **IMPORT DUTY AND TAXES**: If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

**Cost of Insurance and Transportation**: If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8. **DELAY IN OR NON-SHIPMENT**: If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

(a) Seller shall not be liable therefore and,

(b) Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9. **DEVIATION**: If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and/or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10. **CLAIMS**: (a) Shortages – All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

(b) Damaged or Defective Material–All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for Internal sweating on wrapped steel. Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11. **SELLER'S REMEDIES**: In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12. **PURCHASER'S REMEDIES**: Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13. **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY** Any legally invalid provision hereof shall be considered severable

21. **FORCE MAJEURE** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT K

# EXHIBIT K

# Vinson&Elkins

**David A. Lang**  dlang@velaw.com
Tel 713.758.2250  Fax 713.615.5629

July 5, 2007

Mr. Kennon Whaley
Southeastern Stud & Components, Inc.
4542 Baldwin Avenue
Montgomery, Alabama 36108

> Re:  Payment of Invoice Numbers 24446, 24605, 24646, 24648, 24677, 34840 and DN24764 ("*Invoices*") dated December 15, 2006, December 29, 2006, January 5, 2007, January 5, 2007, January 12, 2007, February 8, 2007 and January 29, 2007, respectively, in connection with the orders related thereto ("*Orders*") placed by Southeaster Stud & Components, Inc. ("*SE Stud*") with Salzgitter Mannesmann International, Inc. ("*Salzgitter*")

Dear Mr. Whaley:

We represent Salzgitter with respect to the payment of the Invoices in connection with the Orders. Salzgitter has informed us that the Invoices have not been paid in accordance with their terms and that the amount of $699,334.78 is now past due and owing.

Accordingly, on behalf of Salzgitter, we hereby demand that, no later than Friday, July 13, 2007, you wire US$699,334.78 to Salzgitter in accordance with the following wiring instructions:

|  |  |
|---|---|
| Bank Name: | Societe Generale |
| ABA: | 026004226 |
| Acct Name: | Salzgitter Mannesmann International (USA), Inc. |
| Acct #: | 189383 |

If you should fail to deliver the amount specified above as directed by Friday, July 13, 2007, Salzgitter intends to pursue all remedies available to recover the payment of the Invoices due Salzgitter in connection with the Orders and any other amounts to which Salgitter is entitled.

Nothing in this letter waives any rights, remedies or recourse that Salzgitter may have with respect to your failure to pay the Invoices in connection with the Orders.

---

**Vinson & Elkins LLP Attorneys at Law**
Austin Beijing Dallas Dubai Hong Kong Houston
London Moscow New York Shanghai Tokyo Washington

First City Tower, 1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
Tel 713.758.2222 Fax 713.758.2346 www.velaw.com

Houston 3309028v.1

V&E

Please contact the undersigned at the phone number above if you have any questions regarding this matter.

Sincerely,

David A. Lang