IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| SALZGITTER MANNESMANN INTERNATIONAL (USA) INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No.: 2:07cv764-MHT ) |
| SOUTHEASTERN STUD & COMPONENTS, INC., | ) ) ) ) |
| Defendant. | ) ) ) |

## BRIEF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Salzgitter Mannesmann International (USA) Inc. ("Salzgitter"), has moved this Court, pursuant to FED R. CIV. P. 56, for summary judgment on its claim in the above-captioned case on the ground that there are no genuine issues as to any material fact, and Plaintiff is entitled to judgment as a matter of law, and offers this Brief in support of its Motion.

## STANDARD ON SUMMARY JUDGMENT

Summary judgment requires a trial court to decide cases where no genuine issues of material fact are present. *See* Fed. R. Civ. P. 56. The court must determine: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. *Id.; see also*

1

*Smith v. Allen*, 502 F.3d 1255, 1265 (11th Cir. 2007). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by offering evidence showing no dispute of material fact or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.

## STATEMENT OF UNDISPUTED FACTS

1.    Salzgitter is a steel distributor with its headquarters and principal place of business in Houston, Texas. (*See* Affidavit of Rolf Mainz ("Mainz Aff."), attached hereto as **Exhibit A,** p. 1, ¶ 2, ln. 1.)

2.    Southeastern Stud is a manufacturer and distributor of light gauge steel framing, and is headquartered and has its principal place of business in Montgomery, Alabama. (*See* Defendant's Answer, **Doc. 8**, p. 1, ¶ 2, ln. 1.)

3.    Beginning in 2003, Southeastern Stud and Salzgitter entered into a series of steel-supply contracts for galvanized steel coils to be delivered to New Orleans, Louisiana. (*See* Mainz Aff., **Exhibit A**, p. 1, ¶ 2, lns. 4-7.)

4.     On or about January 24, 2006, Southeastern Stud sent Salzgitter Purchase Order No. sd-012306. (*See* Mainz Aff., **Exhibit A**, p. 2, ¶ 3, lns. 1-2 and **Exhibit 1(a)** thereto; Defendant's Response to Plaintiff's Requests for Admissions ("Admissions Doc."), attached hereto as **Exhibit B**, p. 7, ¶ 1, ln. 3.)

5.     On or about February 6, 2006 Salzgitter sent Southeastern Stud a written Order Confirmation for Purchase Order No. sd-012306. (*See* Mainz Aff., **Exhibit A**, p. 2, ¶ 4, lns. 1-2 and **Exhibit 2(a)**; Admissions Doc., **Exhibit B**, p. 7, ¶ 2, ln. 3.)

6.     Salzgitter arranged for the overseas purchase of the steel ordered by Southeastern Stud, and its delivery to New Orleans. (*See* Mainz Aff., **Exhibit A**, p. 2, ¶ 5, lns. 1-3.) In early-October, 2006, this steel arrived in New Orleans. (*Id.*) Southeastern Stud took delivery of some steel in this shipment. (*See* Admissions Doc., **Exhibit B**, p. 4, ¶ 8, lns. 3-5.)

7.     On or about May 11, 2006, Southeastern Stud sent Salzgitter Purchase Order No. 1414. (*See* Mainz Aff., **Exhibit A**, p. 2, ¶ 6, lns. 1-2 and **Exhibit 1(b)**; Admissions Doc., **Exhibit B**, p. 7, ¶ 1, ln. 3.)

8.     On or about May 23, 2006, Salzgitter sent Southeastern Stud a Confirmation of Purchase Order No. 1414, reflecting the same terms. (*See* Mainz Aff., **Exhibit A**, p. 3, ¶ 7, lns. 1-2 and **Exhibit 2(b)**; Admissions Doc., **Exhibit B**, p. 7, ¶ 2, ln. 3.)

3

9.    Salzgitter arranged for the overseas purchase of the steel ordered by Southeastern Stud. (*See* Mainz Aff., **Exhibit A**, p. 3, ¶ 8, lns. 1-2.) On or around September 9, 2006, this steel arrived in New Orleans. (*Id.* at ¶ 8, ln. 3.) Southeastern Stud took delivery of some steel from this shipment. (*See* Admissions Doc., **Exhibit B**, pp. 2-3, ¶ 4, lns. 1-6.)

10.    On or about July 13, 2006, Southeastern Stud sent Salzgitter Purchase Order No. 1496. (*See* Mainz Aff., **Exhibit A**, p. 3, ¶ 9 and **Exhibit 1(c)**; Admissions Doc., **Exhibit B**, p. 7, ¶ 1, ln. 3.)

11.    On or about August 15, 2006, Salzgitter sent Southeastern Stud a Confirmation of Purchase Order No. 1496, reflecting the same terms. (*See* Mainz Aff., **Exhibit A**, p. 3, ¶ 10, lns. 1-2 and **Exhibit 2(c)**; Admissions Doc., **Exhibit B**, p. 7, ¶ 2, ln. 3.)

12.    Salzgitter arranged for the overseas purchase of the steel ordered by Southeastern Stud, and its delivery to New Orleans. (*See* Mainz Aff., **Exhibit A**, p. 3, ¶ 11, lns. 1-2.) In November, 2006, the steel arrived in New Orleans. (*Id.* at ¶ 8, ln. 3.) Southeastern Stud took delivery of some steel in this shipment. (*See* Admissions Doc., **Exhibit B**, p. 3, ¶ 6, lns. 1-6.)

13.    Upon arrival in New Orleans, steel identified in Paragraphs 3 through 12 above was delivered or made available to Southeastern Stud upon request. (*See* Mainz Aff., **Exhibit A**, pp. 3-4, ¶ 12, lns. 1-3.) Upon each such delivery, an

4

invoice was issued to Southeastern Stud (the "Invoices"), only for the steel of which it took delivery. (*Id.* at p. 4, ¶ 12, lns. 3-4.)

14.    On or about December 15, 2006, as evidenced by Invoice No. 24446, Salzgitter delivered steel to Southeastern Stud from Purchase Order No. sd-012306. (*See* Mainz Aff., **Exhibit A**, p. 4, ¶ 13, lns. 1-3 and **Exhibit 3(a)**, p.1.) The total amount of Invoice No. 24446 was $80,848.35. (*Id.*)

15.    Southeastern Stud has paid only $46,387.91 towards Invoice No. 24446, leaving a balance due of $34,460.44. (*See* Mainz Aff., **Exhibit A**, p. 4, ¶ 13, lns. 5-6.)

16.    On or about December 29, 2006, as evidenced by Invoice No. 24605, Salzgitter delivered steel to Southeastern Stud from Purchase Order No. 1414. (*See* Mainz Aff., **Exhibit A**, p. 4, ¶ 14, lns. 1-3 and **Exhibit 3(b)**, p. 1.) The total amount of Invoice No. 24605 was $91,098.82. (*Id.*)

17.    Southeastern Stud has paid only $20,000.00 towards Invoice No. 24605, leaving a balance due of $71,098.82. (*See* Admissions Doc., **Exhibit B**, p. 5, ¶ 13, lns. 1-3.)

18.    On or about January 5, 2007, as evidenced by Invoice No. 24646, Salzgitter delivered steel to Southeastern Stud from Purchase Order No. 1414. (*See* Mainz Aff., **Exhibit A**, p. 4, ¶ 15, lns. 1-3 and **Exhibit 3(c)**, p. 1.) The total amount of Invoice No. 24646 was $328,271.23. (*Id.*)

19.    Southeastern Stud has not paid any amounts towards Invoice No. 24646, leaving a balance due of $328,271.23. (*See* Admissions Doc., **Exhibit B**, p. 5, ¶ 14, lns. 1-3.)

20.    On or about January 5, 2007, as evidenced by Invoice No. 24648, Salzgitter delivered steel to Southeastern Stud from Purchase Order No. 1496. (*See* Mainz Aff., **Exhibit A**, p. 5, ¶ 16, lns. 1-3 and **Exhibit 3(d)**, p. 1.)  The total amount of Invoice No. 24648 was $147,864.17.  (*Id.*)

21.    Southeastern Stud has not paid any amounts towards Invoice No. 24648, leaving a balance due of $147,864.17.  (*See* Admissions Doc., **Exhibit B**, pp. 5-6, ¶ 15, lns. 1-3.)

22.    On or about January 12, 2007, as evidenced by Invoice No. 24677, Salzgitter delivered steel to Southeastern Stud from Purchase Order No. 1496. (*See* Mainz Aff., **Exhibit A**, p. 5, ¶ 17, lns. 1-3 and **Exhibit 3(e)**, p. 1.)  The total amount of Invoice No. 24677 was $77,613.83. (*Id.*)

23.    Southeastern Stud has not paid any amounts towards Invoice No. 24677, leaving a balance due of $77,613.83.  (*See* Admissions Doc., **Exhibit B**, p. 6, ¶ 16, lns. 1-3).

24.    On or about February 8, 2007, as evidenced by Invoice No. 24840, Salzgitter delivered steel to Southeastern Stud from Purchase Order No. 1414.

6

(*See* Mainz Aff., **Exhibit A**, p. 5, ¶ 18, lns. 1-3 and **Exhibit 3(f)**, p. 1.) The total amount of Invoice No. 24840 was $15,146.73.  (*Id.*)

25.    Southeastern Stud has not paid any amounts towards Invoice No. 24840, leaving a balance due of $15,146.73.  (*See* Admissions Doc., **Exhibit B**, p. 6, ¶ 17, lns. 1-3.)

26.    On or about April 30, 2007, as evidenced by Invoice No. 25501, Salzgitter delivered steel to Southeastern Stud from Purchase Order No. sd-012306.  *See* Mainz Aff., **Exhibit A**, pp. 5-6, ¶ 19, lns. 1-3 and **Exhibit 3(g)**, p. 1.) The total amount of Invoice No. 25501 was $10,148.97.  (*Id.*)

27.    Southeastern Stud has not paid any amounts towards Invoice No. 25501, leaving a balance due of $10,148.97.  (*See* Mainz Aff., Exhibit A, p. 6, ¶ 19, lns. 5-6.)

28.    On or about May 8, 2007, as evidenced by Invoice No. 25549, Salzgitter delivered additional steel to Southeastern Stud.  *See* Mainz Aff., **Exhibit A**, p. 6, ¶ 20, lns. 1-3 and **Exhibit 3(h)**, p. 1.)  The total amount of Invoice No. 25549 was $16,238.88.  (*Id.*)

29.    Southeastern Stud has not paid any amounts towards Invoice No. 25549, leaving a balance due of $16,238.88.  (*See* Mainz Aff., **Exhibit A**, p. 6, ¶ 20, lns. 5-6.)

30.     The Invoices, by their Terms and Conditions, provide that Salzgitter is entitled to interest on the outstanding balance at the rate of prime plus two percent. *See, e.g.,* Invoice No. 25501, attached as **Exhibit 3(g)** to Mainz Aff., **Exhibit A**, p. 3, ¶ 14, lns. 1-5.)

31.     On January 29, 2007, Salzgitter sent Southeastern Stud Invoice No. DN2476, for $4,590.32, representing interest charges accrued against the unpaid invoice amounts to that date. (*See* Mainz Aff., **Exhibit A**, p. 6, ¶ 21, lns. 1-3 and **Exhibit 3(i)**, p. 1.)

32.     The total unpaid balance on all of the above-described invoices is $699,334.78.  (*See* Mainz Aff., **Exhibit A**, p. 6, ¶ 22, lns. 1-2.)

33.     The Invoice Terms and Conditions provide that Salzgitter is entitled to attorneys' fees and costs associated with enforcing its rights against Southeastern Stud.  (*See, e.g.,* Invoice No. 25501, attached as **Exhibit 3(g)** to Mainz Aff., **Exhibit A**, p. 2,  ¶ 11, lns. 1-12.)

34.     The Invoice Terms and Conditions further provide that the law of the State of Texas shall govern the relationship of the parties.  (*See id*, at p. 3, ¶ 22, lns. 1-3.)

## ARGUMENT

There are no genuine issues of material fact with regard to Salzgitter's breach of contract claim, and Salzgitter is entitled to judgment as a matter of law. Under Texas law, the essential elements of breach of contract are: "1) the existence of a valid contract, (2) that the plaintiff performed or tendered performance, (3) that the defendant breached the contract, and (4) that the plaintiff was damaged as a result of the breach." *Southwell v. University of the Incarnate Word*, 974 S.W. 2d 351, 354-55 (Tex. App. Ct. 2007).[1]

### A.    Southeastern Stud Agreed to Purchase Steel From Salzgitter.

Southeastern Stud and Salzgitter entered into valid contracts for the purchase and sale of galvanized steel coils. As described in the Statement of Undisputed Facts and detailed in the supporting Affidavit, Southeastern Stud sent Salzgitter purchase orders (the "Purchase Orders") for steel. Salzgitter sent written order confirmations in return (the "Order Confirmations"). These documents contained all fundamental terms of the parties' agreement, including price, quantity, characteristics of goods, and basic payment terms.

Southeastern Stud received or took delivery of steel in these Orders. Salzgitter issued invoices (the "Invoices") to Southeastern Stud referencing the

---

[1] The documents memorializing the agreement between the parties expressly provide that the contracts shall be governed by the laws of the State of Texas. *See* Statement of Undisputed Facts, Paragraph 24, *supra*. Choice of law provisions are fully enforceable in Alabama. *See, e.g., Polaris Sales, Inc. v. Harris Imports, Inc.*, 879 So. 2d 1129, 1133 (Ala. 2003) ("Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement.").

steel in the Purchase Orders that had been received by or delivered to Southeastern Stud (collectively, the Purchase Orders, Order Confirmations, and Invoices are referred to as the "Contract Documents").

Both by its express agreement, in the form of the Purchase Orders, and by its conduct, in taking delivery of the steel, Southeastern Stud agreed to purchase steel from Salzgitter on the terms expressed in the Contract Documents (the "Contract Term").

### B.   Salzgitter Performed on the Contracts Between the Parties.

Salzgitter fully performed its obligations under the steel supply contracts between the parties and the Contract Documents.   There is no dispute that Salzgitter obtained the steel ordered by Southeastern Stud, arranged to have it shipped to New Orleans, and delivered it to Southeastern Stud, which was invoiced for the steel it took.

### C.   Southeastern Stud Breached the Contracts Between the Parties.

The Contract Terms required Southeastern Stud to make payment for the steel it ordered and for which it took delivery, as provided by the Contract Documents.   Southeastern Stud has failed to pay the amounts invoiced by Salzgitter, amounting to $694,744.26.   This constitutes a breach of Southeastern Stud's primary obligation under its contracts with Salzgitter.

10

### D.     Salzgitter Has Been Damaged.

Salzgitter has been damaged by Southeastern Stud's conduct. It has supplied steel to Southeastern Stud without receiving payment. Salzgitter is entitled to the contract price for the goods received by Southeastern Stud for which it has not paid: $694,744.26.

The undisputed facts evidence that Southeastern Stud entered into steel-supply contracts with Salzgitter, that Salzgitter performed by supplying the steel, and that Southeastern Stud breached the contracts by failing to pay for the steel. Salzgitter is entitled to damages in the amount owed under the contracts, plus interest as provided for in the contract documents.

### E.     Salzgitter is Contractually Entitled to Interest and Attorneys' Fees.

The Contract Documents expressly provide that Salzgitter is entitled to interest at the rate of prime plus two percent on the unpaid balance owed by Salzgitter. Salzgitter has properly debited Southeastern Stud's account, via invoice, for $4,590.32 in interest charges up to January 29, 2007, bringing Southeastern Stud's recorded outstanding balance to **$699,334.78.** (*See* Statement of Undisputed Facts, Paragraphs 31 and 32, *supra*.) Salzgitter is further entitled to interest, at the contract rate, on the full outstanding balance, having accrued up to the date of this filing.

The Contract Documents also provide that Salzgitter is entitled to an award of reasonable attorneys' fees and costs associated with enforcing its rights against Southeastern Stud. By reason of Southeastern Stud's breach of the Contracts between the parties, Salzgitter has incurred attorneys' fees and costs of litigation.

## CONCLUSION

Salzgitter is entitled to summary judgment on its breach of contract claim because the undisputed facts demonstrate that Salzgitter has fully performed under the steel-supply contracts between Salzgitter and Southeastern Stud, that Southeastern Stud has breached those contracts, and that Salzgitter has been damaged as a result. Salzgitter is therefore entitled to judgment as a matter of law on its claim for breach of contract, as well as interest, attorneys' fees, and costs.

WHEREFORE, Plaintiff Salzgitter Mannesmann International (USA) Inc., requests that the Court grant its Motion for Summary Judgment and enter a judgment on its behalf against Defendant Southeastern Stud & Components, Inc.

 s/ J. Forrest Hinton
J. FORREST HINTON
CHRISTOPHER C. HAUG

Attorneys for Plaintiff Salzgitter
Mannesmann International (USA) Inc.

12

OF COUNSEL:

BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, PC
Wachovia Tower
420 20th Street North, Suite 1600
Birmingham, Alabama  35203
Telephone (205) 328-0480
Facsimile (205) 322-8007

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2008, the foregoing was served by electronic

mail via the Court's CM/ECF system on the following:

James L. Day
Von G. Memory
Memory & Day
469 South McDonough Street
Montgomery, Alabama 36103-4054
Telephone (334) 834-8000
Facsimile  (334) 834-8001


                                   s/ J. Forrest Hinton
                                   Of Counsel

13

# EXHIBIT A

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

SALZGITTER MANNESMANN )
INTERNATIONAL (USA) INC., )
)
)
Plaintiff, )
)
v. ) Civil Action No.: 2:07cv764-MHT
)
SOUTHEASTERN STUD & )
COMPONENTS, INC., )
)
)
Defendant. )

## AFFIDAVIT OF ROLF MAINZ

**STATE OF ILLINOIS )**

**COUNTY OF** <u>COOK</u> **)**

1.     My name is Rolf Mainz. I am over 21 years of age and am competent

to testify in the above-referenced matter. I am, and was at all times relevant to the

matters testified to herein, an Executive Vice President of Salzgitter Mannesmann

International (USA) Inc ("Salzgitter"). This Affidavit is based on my personal

knowledge.

2.     Salzgitter is a steel distributor with its headquarters and principal

place of business in Houston, Texas. In my position as Salzgitter Executive Vice

President, I am familiar with Southeastern Stud & Components, Inc.

- 1 -

("Southeastern Stud").    Beginning in 2003, Southeastern Stud and Salzgitter entered into a series of steel supply contracts.  Southeastern Stud placed orders for hot-dipped, flat-rolled galvanized coils with Salzgitter, which obtained the steel overseas and delivered it to New Orleans, Louisiana.

3.    On or about January 24, 2006, Southeastern Stud sent Salzgitter Purchase Order No. sd-012306, for 1,873,000 pounds of hot-dipped flat rolled galvanized steel coils at a price of $603,759.50, to be delivered to New Orleans, Louisiana.  A true and correct copy of Purchase Order No. sd-012306 is attached to this Affidavit as **Exhibit 1(a)**.

4.    On or about February 6, 2006, Salzgitter sent Southeastern Stud a Confirmation of Purchase Order No. sd-012306, reflecting the same terms. A true and correct copy of this Order Confirmation is attached to this Affidavit as **Exhibit 2(a)**.

5.    Salzgitter arranged for the overseas purchase of the steel ordered by Southeastern Stud, and its delivery to New Orleans.  In early-October 2006, this steel arrived in New Orleans.

6.    On or about May 11, 2006, Southeastern Stud sent Salzgitter Purchase Order No. 1414, for 1,764,000 pounds of steel at a price of $714,366.00, to be delivered to New Orleans, Louisiana.  A true and correct copy of Purchase Order No. 1414, is attached to this Affidavit as **Exhibit 1(b)**.

7.    On or about May 23, 2006, Salzgitter sent Southeastern Stud a Confirmation of Purchase Order No. 1414, reflecting the same terms.  A true and correct copy of this Order Confirmation is attached to this Affidavit as **Exhibit 2(b)**.

8.    Salzgitter arranged for the overseas purchase of the steel ordered by Southeastern Stud.  On or around September 9, 2006, this steel arrived in New Orleans.

9.    On or about July 13, 2006, Southeastern Stud sent Salzgitter Purchase Order No. 1496, for 1,764,000 pounds of steel at a price of $728,196.00, to be delivered to New Orleans, Louisiana.  A true and correct copy of Purchase Order No. 1496, is attached to this Affidavit as **Exhibit 1(c)**.

10.    On or about August 15, 2006, Salzgitter sent Southeastern Stud a Confirmation of Purchase Order No. 1496, reflecting the same terms.  A true and correct copy of this Order Confirmation is attached this Affidavit as **Exhibit 2(c)**. Defendant has admitted the truth, authenticity, and correctness of this document.

11.    Salzgitter arranged for the overseas purchase of the steel ordered by Southeastern Stud, and its delivery to New Orleans.  In November, 2006, this steel arrived in New Orleans.

12.    Upon arrival in New Orleans, much of the steel identified in Paragraphs 3 through 12 was held by Salzgitter and delivered to Southeastern Stud

in smaller amounts on request. Upon each such delivery, an invoice was issued to Southeastern Stud, only for the steel of which it took delivery.

13.     On or about December 15, 2006, as evidenced by Invoice No. 24446, Salzgitter delivered to Southeastern Stud 253,443 pounds of steel from Purchase Order No. sd-012306. A true and correct copy of Invoice No. 24446 is attached to this Affidavit as **Exhibit 3(a)**. The total amount of Invoice No. 24446 was $80,848.35. Southeastern Stud, to date, has paid only $46,387.91 towards this Invoice, leaving a balance due of $34,460.44.

14.     On or about December 29, 2006, as evidenced by Invoice No. 24605, Salzgitter delivered to Southeastern Stud 217,420 pounds of steel from Purchase Order No. 1414. A true and correct copy of Invoice No. 24605 is attached to this Affidavit as **Exhibit 3(b)**. The total amount of Invoice No. 24605 was $91,098.82. Southeastern Stud, to date, has paid only $20,000.00 towards this invoice, leaving a balance due of $71,098.82.

15.     On or about January 5, 2007, as evidenced by Invoice No. 24646, Salzgitter delivered to Southeastern Stud 774,770 pounds of steel from Purchase Order No. 1414. A true and correct copy of Invoice No. 24646 is attached to this Affidavit as **Exhibit 3(c)**. The total amount of Invoice No. 24646 was $328,271.23. Southeastern Stud, to date, has not paid any amounts towards this invoice, leaving a balance due of $328,271.23.

- 4 -

16.     Also on or about January 5, 2007, as evidenced by Invoice No. 24648, Salzgitter delivered to Southeastern Stud 366,430 pounds of steel from Purchase Order No. 1496. A true and correct copy of Invoice No. 24648 is attached to this Affidavit as **Exhibit 3(d)**.     The total amount of Invoice No. 24648 was $147,864.17. Southeastern Stud, to date, has not paid any amounts towards this invoice, leaving a balance due of $147,864.17.

17.     On or about January 12, 2007, as evidenced by Invoice No. 24677, Salzgitter delivered to Southeastern Stud 191,185 pounds of steel from Purchase Order No. 1496. A true and correct copy of Invoice No. 24677 is attached to this Affidavit as **Exhibit 3(e)**. The total amount of Invoice No. 24677 was $77,613.83. Southeastern Stud, to date, has not paid any amounts towards this invoice, leaving a balance due of $77,613.83.

18.     On or about February 8, 2007, as evidenced by Invoice No. 24840, Salzgitter delivered to Southeastern Stud 35,935 pounds of steel from Purchase Order No. 1414. A true and correct copy of Invoice No. 24840 is attached to this Affidavit as **Exhibit 3(f)**. The total amount of Invoice No. 24840 was $15,146.73. Southeastern Stud, to date, has not paid any amounts towards this invoice, leaving a balance due of $15,146.73.

19.     On or about April 30, 2007, as evidenced by Invoice No. 25501, Salzgitter delivered to Southeastern Stud 29,762 pounds of steel from Purchase

Order No. sd-12306. A true and correct copy of Invoice No. 25501 is attached to this Affidavit as **Exhibit 3(g)**. The total amount of Invoice No. 25501 was $10,148.97. Southeastern Stud, to date, has not paid any amounts towards this invoice, leaving a balance due of $10,148.97.

20.    On or about May 8, 2007, as evidenced by Invoice No. 25549, Salzgitter delivered additional steel to Southeastern Stud. A true and correct copy of Invoice No. 25549 is attached to this Affidavit as **Exhibit 3(h)**. The total amount of Invoice No. 25549 was $16,238.88. Southeastern Stud, to date, has not paid any amounts towards this invoice, leaving a balance due of $16,238.88.

21.    On or about January 29, 2007, Salzgitter sent Southeastern Stud Invoice No. DN24764, for $4590.32, representing interest accrued against the unpaid invoice amounts to that date. A true and correct copy of Invoice No. DN24764 is attached to this Affidavit as **Exhibit 3(i).**

22.    The total unpaid balance on these Invoices, minus $6,098.81 credited to Southeastern Stud for variances in contract amounts, is $699,334.78.

FURTHER AFFIANT SAITH NOT.

ROLF MAINZ

- 6 -

Sworn to and subscribed before me this 2nd day of April , 2008.

_____

Notary Public

"OFFICIAL SEAL"
WALTER A. MINER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4/27/2010

My Commission Expires: 4/27/2010

- 7 -

# EXHIBIT 1-A

# EXHIBIT 1-A

*A.H. Bee 7 Pre-calc 2708*

# PURCHASE ORDER

**utheastern Stud & Components**

2 Baldwin Avenue
ntgomery, AL 36108
ine: (334) 286-0838  Fax: (334) 286-0839

| DATE | P.O. NUMBER |
|------|-------------|
| 1/24/2006 | sd-012306-1 |

| SHIP TO |
|---------|
| "CUSTOMER PICK-UP" |

BUYER: Scott Dowdell @ 812-280-7581

| VENDOR |
|--------|
| ZGITTER INTERNATIONAL, INC.<br>0 N. Barrington Rd, Suite 610<br>ffman Estates, IL 60195 |

n: Rolf Mainz

| PHONE: | 847-843-3800 |
|--------|-------------|
| FAX: | 847-843-3802 |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| | "Prime" galvanize, ASTM A-653, Normal spangle, chem treated, lightly oiled, 20" I.D., coil weights 14,000-23,000 lbs. Tolerance: 1/2 ASTM Guaranteed (aim 1/4 max) | | | |
| 1 | .016 min x 48.000", G40, CS-b<br>Aim .017 max at crown | 441,000 | $0.3345 | $147,514.50 |
| 2 | .0265 min x 48.000", G40, CS-b<br>Aim .0275 max at crown | 441,000 | $0.3195 | $140,899.50 |
| 3 | .0435 min x 48.375", G40, CS-b<br>Aim .0445 max at crown | 441,000 | $0.3165 | $139,576.50 |
| 4 | .054 min x 48.375", G60, grade 50<br>Aim .055 max at crown | 551,000 | $0.3190 | $175,769.00 |
| | | 1,873,000<br>= 850 M.T. | | $0.00 |

Note:
Please include P.O. # on all Bill of Lading papers.
Contact Tina Merriweather at 334-286-0838 when ready for pick-up.

| | | | | |
|--|--|--|--|--|
| | | | SUBTOTAL | $603,759.50 |
| ETA | late April/early May | | | |
| F.O.B. | EDDP, loaded truck, NOLA | | S & H | |
| Loading | EYE TO SIDE FOR SIDE FORK UNLOADING | | TAX | |
| Terms | Net 2045 | | TOTAL | $603,759.50 |
| Quality | "Prime" | | | |

# EXHIBIT  1-B

# EXHIBIT  1-B

MAY-2?-?? ?6  15:15                                                          P.01/01

**Southeastern Stud & Components, Inc.**
4?4? ?? ?win Avenue
Mont?????ry, AL 36108
Phon? ?334)286-0838  Fax: (334)286-0839

| PURCHASE ORDER | |
|---|---|
| **DATE** | **PO #** |
| 5/11/2006 | 1414 |

| VENDOR |
|---|
| Salz?itter International |
| 230? N. Barrington Road |
| Suit? 610 |
| Ho?fman Estates, IL  60195 |
| ATT?: Rolf Mainz |
| Phone: 847-843-3800 |
| Fax:  847-843-3802 |

| SHIP TO |
|---|
| Customer Pick Up |
| |
| Buyer: Scott Dowdell @ 812.280.7581 |

| SPECIFICATIONS | | | | |
|---|---|---|---|---|
| ASTM A653, NORMAL SPANGLE, CHEM TREAT, LIGHT OIL, 20" ID, COIL WEIGHTS 14,000-23,000 LBS, PAYMENT TERMS = NET 30 FROM RELEASE AT DOCK. | | | | |
| Line | Description | Pounds | Rate | Ext. $ |
| ? | .?165 min (aim .0175 max at crown) x 48, G40, grade CSb | 661000 | $0.4465 | $295,136.50 |
| ? | .?27 min (aim .028 max at crown) x 48, G40, grade CSb | 551000 | $0.4255 | $234,450.50 |
| ? | .?435 min (aim .0445 max at crown) x 48, G40, grade CSb | 441000 | $0.4190 | $184,779.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | TOTAL | 1653000 | | $714,366.00 |

DEL???RY: Fax release and pick up information to Chuck Neeley at 334-286-0839.
S??T?EASTERN STUD PO# MUST BE ON ALL BILL OF LADINGS!!!

| | |
|---|---|
| | 5/15/2006 |
| | EDDP, LOADED TRUCK, NEW ORLEANS |
| L?A?I?G: | EYE TO THE SIDE FOR FORKLIFT UNLOADING! |
| ?RMS: | Net 30 |
| Q???TY: | "PRIME", TOLERANCE: 1/2 ASTM A924 GUARANTEED - AIM 1/4 |

Page 1/1   ?o8.1.15/Purchasing/poPrint.asp

5/23/2006
TOTAL P.01

A.H. Anna

?? ?fte-calc  3329

Regds. )

R?? ?la?l?r

Salzgitter Mannesmann Internaitonal
(USA) Inc. v. Southeastern Stud &
Components, Inc.

SALZ 07-00042

# EXHIBIT 1-C

# EXHIBIT 1-C

812-280-7087                    p.1

3 06 12:49p     SCOTT DOWDELL

**PURCHASE ORDER**

heastern Stud & Components, Inc.

Baldwin Avenue
gomery, AL 36108
e: (334)286-0838    Fax: (334)286-0839

| DATE | PO # |
|---|---|
| 7/13/2006 | 1496 |

**SHIP TO**

Customer Pick Up

**VENDOR**

gitter International
0 N. Barrington Road
e 610
rman Estates, IL 60195
TN: Rolf Mainz
ne:  847-843-3800
:  847-843-3802

**Buyer: Scott Dowdell @ 812.280.7581**

**SPECIFICATIONS**

SPECIFICATIONS APPLY. NORMAL SPANGLE, CHEM TREAT, LIGHT OIL, 20" ID, COIL WTS 13,000-23,000 LBS.
MENT TERMS = NET 30 FROM RELEASE AT DOCK.

| Description | Pounds | Rate | Ext. $ |
|---|---|---|---|
| e # | | 551000 | $0.4290 | $236,379.00 |
| .0165 min (aim .0175 max at crown) x 48, G30, grade CSb | 772000 | $0.4080 | $314,976.00 |
| .027 min (aim .028 max at crown) x 48, G30, grade CSb | 441000 | $0.4010 | $176,841.00 |
| 3   .0435 min (aim .0445 max at crown) x 48.375, G40, grade CSb | | | |
| **TOTAL** | **1764000** | | **$728,196.00** |

ELIVERY: Fax release and pick up information, e-mail Chuck Neeley at cneeley@sestud.com, or fax to Chuck
e  y at 334-286-0839.
C THEASTERN STUD PO# MUST BE ON ALL BILL OF LADINGS!!!

| ETA: | 11/15/2006 |
|---|---|
| FOB: | EDDP, LOADED TRUCK, NEW ORLEANS |
| LOADING: | EYE TO THE SIDE FOR FORKLIFT UNLOADING! |
| TERMS: | Net 30 |
| QUALITY: | "PRIME", TOLERANCE: 1/2 JIS GUARANTEED - AIM 1/4 |

Pre-calc 3652

# EXHIBIT 2-A

# EXHIBIT 2-A



**Salzgitter Mannesmann
International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330



**A Member of the Salzgitter Group**

| | |
|---|---|
| Sales Order No. | SCH-05840 |
| Print Date | 02/06/2006 |

# COPY

| TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>542 Baldwin Ave.<br>Montgomery, AL 36108 | Southeastern Stud & Components<br>New Orleans, LA |

| F.O.B. POINT | SHIP VIA | ORDERED BY | CUSTOMER P.O. NO. |
|---|---|---|---|
| | VESSEL | | SD-012306-1 |
| | TERMS | SALES PERSON | CONTRACT NUMBER |
| ORDER DATE | | Rolf Mainz | |
| 2/6/2006 | 30 days from date of invoice | | |

| ITEM | DESCRIPTION | UNIT | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|

We hereby confirm having sold to you subject to our conditions stated below and based on our attached Terms and Conditions of Sale for consumption
: U.S.A.

Mill: Lloyd's, India

CIF - Cost, insurance and freight prepaid to New Orleans, LA, according to Incoterms 2000 latest edition, loaded truck and duty paid.

Prime hot dipped galvanized coils, ASTM A-653, zero spangle, skinpassed, chem.treat, light oil, G-40 coating for items 1-3, G-60, grade 50 for item 4,
20" I.D., C/W 14 - 23000 C/W lbs. Seaworthy export packed, invoicing on actual net weight basis.

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 0.00 | 200.000 | 440,924 | 33.45 | 147,489.08 |
| 1 | .016  MIN  X  48<br>CS-B, G-40 | 0.00 | 200.000 | 440,924 | 31.95 | 140,875.22 |
| 2 | .0265 MIN  X  48<br>CS-B, G-40 | 0.00 | 200.000 | 440,924 | 31.65 | 139,552.45 |
| 3 | .0435 MIN  X  48.375<br>CS-B, G-40 | 0.00 | 250.000 | 551,155 | 31.90 | 175,818.45 |
| 4 | .054  MIN  X  48.375<br>853 GRADE 50, G-60 | | | | | |

Price Terms: The above mentioned prices are to be understood per CWT of 100 Lbs. Invoicing to be done on actual net weight basis.

Note when loading onto trucks in New Orleans: Eye to side for forklift truck unloading.

Delivery: March 2006 shipment from India, subject to unforeseen circumstances.

Payment: Net 30 days from invoice date that will coincide with the date material is ready for pick up.

Markings:
CH-05840
Customer P.O. SD-012306-1
Quality

Southeastern Stud & Components

# SALZGITTER MANNESMANN INTERNATIONAL

**A Member of the Salzgitter Group**

**Salzgitter Mannesmann
International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

## ORDER CONFIRMATION

| | |
|---|---|
| Sales Order No. | SCH-05840 |
| Print Date | 02/06/2006 |

oil No.
eat No.
ze in inches
ross/Net weight in lbs and kgs
ade in India

| | TOTAL | 0.00 | 850.000 | 1,873,927 | 603,735.19 |
|---|---|---|---|---|---|

Claim Procedure as per attached sheet.

This sales confirmation is subject to terms and conditions herein stated and those attached, including provisions for arbitration.
Please return one copy of this sales confirmation or duplicate hereof duly signed by you to signify your acceptance of the
rms and conditions. Should we not receive the signed copy/duplicate within 10 days, it is understood that you agree with all terms and conditions
..erein stated.

Our order number and the invoice number must be included on all related correspondence concerning the invoice, including all remittances.
Mill's weights are final. Atmospheric rust on unpacked material is not claimable.

No claims accepted after 30 days of receipt of material.

Seller reserves the right to cancel this contract if any anti-dumping and/or countervailing duties are threatened or applied by the
department of commerce or any other U.S. Government Agency.

Very truly yours,
Seller:
Salzgitter Mannesmann
International (USA), Inc.

Accepted:
Purchaser:

By: _R. A. Moore_

By: _____

Print Name and Title: _____

Date: _____

**Please Sign and Return Duplicate**

Southeastern Stud & Components

# EXHIBIT 2-B

# EXHIBIT 2-B



Salzgitter Mannesmann
International (USA), Inc.
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

**ORDER
CONFIRMATION**

| Sales Order No. | SCH-06249 |
| Print Date | 05/23/2006 |

A Member of the Salzgitter Group

## COPY

| L TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>4542 Baldwin Ave.<br>Montgomery, AL 36108 | Southeastern Stud & Components<br>New Orleans, LA |

| F.O.B. POINT | SHIP VIA | ORDERED BY | CUSTOMER P.O. NO. |
|---|---|---|---|
| | VESSEL | | 1414 |

| ORDER DATE | TERMS | SALES PERSON | CONTRACT NUMBER |
|---|---|---|---|
| 5/18/2006 | 30 days from date of invoice | Rolf Mainz | |

| ITEM | DESCRIPTION | UNIT | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|

/e hereby confirm having sold to you subject to our conditions stated below and based on our attached Terms and Conditions of Sale for consumption
:    U.S.A.

till: Prosperity, Taiwan

:IF - Cost, insurance and freight prepaid to New Orleans, LA, according to Incoterms 2000 latest edition, loaded truck and duty paid.

'rime hot dipped galvanized coils, CS-B, zero spangle,  skinpassed, chem.treat, no oil, G-40,  20" I.D., Max C/W 13000- 23,000lbs.  Seaworthy export
acked, invoicing on actual net weight basis.

| ITEM | DESCRIPTION | UNIT | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|
| 1 | .0165min  x  48 | 0.00 | 300.000 | 661,386 | 44.65 | 295,308.85 |
| 2 | .027  min  x  48" | 0.00 | 250.000 | 551,155 | 42.55 | 234,516.45 |
| ● | .0435 min  x  48" | 0.00 | 200.000 | 440,924 | 41.90 | 184,747.16 |

Price Terms:  The above mentioned prices are to be understood per CWT of 100 Lbs. Invoicing to be done on actual net weight
basis.

Note when loading onto trucks in New Orleans: Eye to side for forklift truck unloading.

Delivery:  July 2006 shipment from Taiwan, subject to unforeseen circumstances.

Payment: Net 30 days from invoice date that will coincide with the date material is ready for pick up.

Markings:
CH-06249
Customer P.O. 1414
Quality
Coil No.
Heat No.
Size in inches
Gross/Net weight in lbs and kgs
Made in Taiwan



**SALZGITTER MANNESMANN INTERNATIONAL**

A Member of the Salzgitter Group

**Salzgitter Mannesmann
International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

**ORDER CONFIRMATION**

| Sales Order No. | SCH-06249 |
|---|---|
| Print Date | 05/23/2006 |

| | | | | |
|---|---|---|---|---|
| **TOTAL** | 0.00 | 750.000 | 1,653,465 | 714,572.46 |

Claim Procedure as per attached sheet.

This sales confirmation is subject to terms and conditions herein stated and those attached, including provisions for arbitration. Please return one copy of this sales confirmation or duplicate hereof duly signed by you to signify your acceptance of the terms and conditions. Should we not receive the signed copy/duplicate within 10 days, it is understood that you agree with all terms and conditions herein stated.

Our order number and the invoice number must be included on all related correspondence concerning the invoice, including all remittances. Mill's weights are final. Atmospheric rust on unpacked material is not claimable.

No claims accepted after 30 days of receipt of material.

Seller reserves the right to cancel this contract if any anti-dumping and/or countervailing duties are threatened or applied by the department of commerce or any other U.S. Government Agency.

Accepted:
Purchaser:

By: _____

Print Name and Title: _____

Date: _____

Very truly yours,
Seller:
Salzgitter Mannesmann
International (USA), Inc.

By: _____

**Please Sign and Return Duplicate**

Southeastern Stud & Components

# EXHIBIT 2-C

# EXHIBIT 2-C



**SALZGITTER MANNESMANN INTERNATIONAL**

A Member of the Salzgitter Group

COPY

**Salzgitter Mannesmann International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| ORDER CONFIRMATION | |
|---|---|
| Sales Order No. | SCH-06577 |
| Print Date | 08/15/2006 |

| BILL TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>4542 Baldwin Ave.<br>Montgomery, AL 36108 | Southeastern Stud & Components<br>New Orleans, LA |

| F.O.B. POINT | SHIP VIA | ORDERED BY | CUSTOMER P.O. NO. |
|---|---|---|---|
| | VESSEL | Scott Dowdell | 1496 |
| | | SALES PERSON | CONTRACT NUMBER |
| ORDER DATE | TERMS | Rolf Mainz | |
| 8/8/2006 | 30 days from date of invoice | | |

| ITEM | DESCRIPTION | UNIT | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|

We hereby confirm having sold to you subject to our conditions stated below and based on our attached Terms and Conditions of Sale for consumption in:    U.S.A.

Mill: Tangshan Hengton / China- SMID ref# 703/2626/53406

CIF - Cost, insurance and freight prepaid to New Orleans, LA, according to Incoterms 2000 latest edition, loaded truck and duty paid.

Note to stevedore:  When loading onto trucks in New Orleans: Eye to side for forklift truck unloading.

Prime hot dipped galvanized coils, items 1-3  CS-B, min  spangle,  , chem.treat, dry, no oil, items 1and 2  G-30,  item 3 G-40 coating,  20" I.D., Max C/W 15000- 23,000lbs.  Seaworthy export packed, invoicing on actual net weight basis.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | 0.00 | 250.000 | 551,155 | 42.90 | 236,445.50 |
| 1 | .0165min  x  48 | | 0.00 | 350.000 | 771,617 | 40.80 | 314,819.74 |
| 2 | .027 min  x  48"  ⅟ 110† | | 0.00 | 200.000 | 440,924 | 40.10 | 176,810.52 |
| | .0435 min  x  48"  7.6† ⅟ 110† | | | | | | |

Price Terms:  The above mentioned prices are to be understood per CWT of 100 Lbs. Invoicing to be done on actual net weight basis.

Delivery:  Sept 2006 shipment from China, subject to unforeseen circumstances.

Payment: Net 30 days from invoice date that will coincide with the date material is ready for pick up.

Markings:
CH-06577
Customer P.O. 1496
Quality
Coil No.
Heat No.
Size in inches
Gross/Net weight in lbs and kgs
Made in China

B/L Aug 14    TopRidge



SALZGITTER
MANNESMANN
INTERNATIONAL
**A Member of the Salzgitter Group**

**Salzgitter Mannesmann
International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

**ORDER
CONFIRMATION**

| Sales Order No. | SCH-06577 |
| Print Date | 08/15/2006 |

| **TOTAL** | 0.00 | 800.000 | 1,763,696 | | 728,075.76 |

Claim Procedure as per attached sheet.

is sales confirmation is subject to terms and conditions herein stated and those attached, including provisions for arbitration.
ease return one copy of this sales confirmation or duplicate hereof duly signed by you to signify your acceptance of the
terms and conditions. Should we not receive the signed copy/duplicate within 10 days, it is understood that you agree with all terms and conditions
rein stated.

Our order number and the invoice number must be included on all related correspondence concerning the invoice, including all remittances.
"il's weights are final. Atmospheric rust on unpacked material is not claimable.

No claims accepted after 30 days of receipt of material.

Seller reserves the right to cancel this contract if any anti-dumping and/or countervailing duties are threatened or applied by the
department of commerce or any other U.S. Government Agency.

Accepted:
chaser:

By: _____

int Name and Title: _____

e: _____

Very truly yours,
Seller:
Salzgitter Mannesmann
International (USA), Inc.

By: _Peggy Hines Uc. Ha Br_

**Please Sign and Return Duplicate**

# EXHIBIT 3-A

# EXHIBIT 3-A



## SALZGITTER MANNESMANN INTERNATIONAL
A Member of the Salzgitter Group

### INVOICE

**Salzgitter Mannesmann International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| Invoice No | 24446 |
|---|---|
| Date | 12/15/06 |
| Due Date | 1/14/07 |
| Order No | SCH-07076 |

Page    1

| BILL TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>4542 Baldwin Ave.<br>Montgomery, AL 36108 | Southeastern Stud & Components<br>CPU @ EMPIRE STEVEDORING<br>NEW ORLEANS, LA |

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | VESSEL |
|---|---|---|---|
| 012306-1 | SCH-07076 | 30 days from date of invoice | VESSEL   AFRICAN HAWK |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC -loaded truck Empire Stevedoring, freight collect, according to UCC terms and conditions (uniform commercial code). Load out fee paid. | | | | | | |
| | Prime HDG, ASTM A 653, Grade 50, G-60 coating, zero spanngle, skin passed, chem treat dry, 20" ID, I.D., C/W 14-23000 LBS. | | | | | | |
| 01 | .0540" min x 48.375" | 0.00 | 14 | 114.960 | 253,443 | 31.90 | 80,848.35 |
| | DOCK RECEIPT NO.S 8-14 | | | | | | |
| **TOTAL** | | 0.00 | 14 | 114.960 | 253,443 | | $80,848.35 |

60,848.35

**PLEASE REMIT TO:**

LOCKBOX REMITTANCE ADDRESS
   SALZGITTER MANNESMANN
   INTERNATIONAL (USA) INC.
   P.O. Box 3107
   Carol Stream, IL 60132-3107

WIRE TRANSFERS:
   BANK NAME:  SOCIETE GENERALE
   ACCOUNT #:  189383
   ABA #  026004226
   ACCOUNT NAME  SALZGITTER MANNESMANN INTERNATIONAL (USA) INC

S0013899

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE, INCLUDING ALL REMITTANCES.  MILL WEIGHTS ARE FINAL.  ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE.  NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL

**TERMS AND CONDITIONS OF SALE**

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1. **TERMS PARAMOUNT** The contract between Purchaser and Seller shall be solely as defined hereby, together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2. **WARRANTY:** SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS: THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3. **QUANTITY:** Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4. **PARTIAL SHIPMENTS:** Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5. **RISK OF LOSS:** Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6. **IMPORT DUTY AND TAXES:** If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

   **Cost of Insurance and Transportation:** If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8. **DELAY IN OR NON-SHIPMENT:** If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

   (a) Seller shall not be liable therefore and,
   (b) Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9. **DEVIATION:** If after the material has been shipped, its arrival at the destination port is delayed or prevented, or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and/or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10. **CLAIMS:** (a) Shortages—All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

    (b) Damaged or Defective Material–All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

    All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

    In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

    In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for internal sweating on wrapped steel. Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11. **SELLER'S REMEDIES:** In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12. **PURCHASER'S REMEDIES:** Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13. **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2½) percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY:** Any legally invalid provision hereof shall be considered severable

21. **FORCE MAJEURE:** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT 3-B

# EXHIBIT 3-B



## SALZGITTER MANNESMANN INTERNATIONAL
A Member of the Salzgitter Group

### INVOICE

**Salzgitter Mannesmann International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| Invoice No. | 24605 |
|---|---|
| Date | 12/29/06 |
| Due Date | 1/28/07 |
| Order No | SCH-07122 |

Page    1

| BILL TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>4542 Baldwin Ave.<br>Montgomery, AL 36108 | Southeastern Stud & Components<br>CPU @ EMPIRE STEVEDORING<br>NEW ORLEANS, LA |

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | | VESSEL | |
|---|---|---|---|---|---|
| 1414 | SCH-07122 | 30 days from date of invoice | | VESSEL | MYRON N |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC -loaded truck, Empire Stevedoring (LA) Inc. freight collect, according to UCC terms and conditions (Uniform Commercial Code). Load out fee paid. | | | | | | |
| | Prime HDG, ASTM A 653, Cs Type B G-40 coating, zero spangle, chem treat dry, 20" ID, I.D., C/W 14-23000 LBS. Seaworthy package. | | | | | | |
| 02 | .0435" min x 48" | 0.00 | 10 | 98.620 | 217,420 | 41.90 | 91,098.82 |
| | DOCK RECEIPTS: 1, 2, 3, 4, 5 | | | | | | |
| | **TOTAL** | 0.00 | 10 | 98.620 | 217,420 | | $91,098.82 |

71,098.82

**PLEASE REMIT TO:**

LOCKBOX REMITTANCE ADDRESS:        WIRE TRANSFERS:

SALZGITTER MANNESMANN                BANK NAME:  SOCIETE GENERALE
INTERNATIONAL (USA), INC.           ACCOUNT #:  189383
P.O. Box 3107                       ABA #:  026004226                    S0014010
Carol Stream, IL 60132-3107         ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC.

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE INCLUDING ALL REMITTANCES. NILL WEIGHTS ARE FINAL. ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE. NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

## TERMS AND CONDITIONS OF SALE

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1. **TERMS PARAMOUNT** The contract between Purchaser and Seller shall be solely as defined hereby, together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2. **WARRANTY: SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS: THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.**

3. **QUANTITY:** Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4. **PARTIAL SHIPMENTS:** Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5. **RISK OF LOSS:** Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6. **IMPORT DUTY AND TAXES:** If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

7. **Cost of Insurance and Transportation:** If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8. **DELAY IN OR NON-SHIPMENT:** If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

   (a) Seller shall not be liable therefore and,
   (b) Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9. **DEVIATION:** If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10. **CLAIMS:** (a) Shortages – All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

    (b) Damaged or Defective Material–All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

    All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

    In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

    In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for internal sweating on wrapped steel. Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11. **SELLER'S REMEDIES:** In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12. **PURCHASER'S REMEDIES:** Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13. **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY:** Any legally invalid provision hereof shall be considered serverable.

21. **FORCE MAJEURE:** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT 3-C

# EXHIBIT 3-C



# SALZGITTER MANNESMANN INTERNATIONAL

A Member of the Salzgitter Group

## INVOICE

**Salzgitter Mannesmann International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| Invoice No. | 24646 |
|---|---|
| Date | 1/5/07 |
| Due Date | 2/4/07 |
| Order No | SCH-07122 |

Page    1

| BILL TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>4542 Baldwin Ave.<br>Montgomery, AL  36108 | Southeastern Stud & Components<br>CPU @ EMPIRE STEVEDORING<br>NEW ORLEANS, LA |

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | VESSEL |
|---|---|---|---|
| 1414 | SCH-07122 | 30 days from date of invoice | VESSEL   MYRON N |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC -loaded truck, Empire Stevedoring (LA) Inc. freight collect,  according to UCC terms and conditions (Uniform Commercial Code).  Load out fee paid. | | | | | | |
| | Prime HDG, ASTM A 653, Cs Type B G-40 coating, zero spangle, chem treat dry, 20" ID, I.D., C/W 14-23000 LBS.   Seaworthy package. | | | | | | |
| 01 | .0270" min x 48" | 0.00 | 26 | 254.205 | 560,425 | 42.55 | 238,481.02 |
| 02 | .0435" min x 48" | 0.00 | 10 | 97.225 | 214,344 | 41.90 | 89,810.21 |
| | DOCK RECEIPTS: 11, 12, 13, 14, 15, 16, 17, 17, 18, 20, 21, 22, 23, 6, 7, 8, 9, 10 | | | | | | |
| **TOTAL** | | 0.00 | 36 | 351.430 | 774,770 | | **$328,271.23** |

**PLEASE REMIT TO:**

LOCKBOX REMITTANCE ADDRESS

SALZGITTER MANNESMANN
INTERNATIONAL (USA), INC.
P.O. Box 3107
Carol Stream, IL 60132-3107

WIRE TRANSFERS·

BANK NAME   SOCIETE GENERALE
ACCOUNT #:  189383
ABA #:  028004226
ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC.

S0014011

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE, INCLUDING ALL REMITTANCES.  MILL WEIGHTS ARE FINAL.  ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE.  NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

**TERMS AND CONDITIONS OF SALE**

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1    **TERMS PARAMOUNT:** The contract between Purchaser and Seller shall be solely as defined hereby, together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2    **WARRANTY: SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS. THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.**

3    **QUANTITY:** Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4    **PARTIAL SHIPMENTS:** Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5    **RISK OF LOSS:** Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6.    **IMPORT DUTY AND TAXES:** If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

7.    **Cost of Insurance and Transportation:** If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8.    **DELAY IN OR NON-SHIPMENT:** If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

   (a)    Seller shall not be liable therefore and,
   (b)    Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9.    **DEVIATION:** If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10.    **CLAIMS:** (a) **Shortages** - All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

   (b) **Damaged or Defective Material**–All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

   All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

   In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

   In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for internal sweating on wrapped steel. Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11.    **SELLER'S REMEDIES:** In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12.    **PURCHASER'S REMEDIES:** Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13. **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY:** Any legally invalid provision hereof shall be considered severable.

21. **FORCE MAJEURE.** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

Jan 2005

# EXHIBIT 3-D

# EXHIBIT 3-D



SALZGITTER
MANNESMANN
INTERNATIONAL

A Member of the Salzgitter Group

# INVOICE

**Salzgitter Mannesmann
International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| Invoice No | 24648 |
|---|---|
| Date | 1/5/07 |
| Due Date | 2/4/07 |
| Order No | SCH-07151 |

Page    1

| BILL TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>4542 Baldwin Ave.<br>Montgomery, AL  36108 | Southeastern Stud & Components<br>CPU @ PACORINI USA<br>NEW ORLEANS, LA |

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | | VESSEL |
|---|---|---|---|---|
| 1496 | SCH-07151 | 30 days from date of invoice | VESSEL | TOP RICH |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC -loaded truck, Pacorini USA Inc. freight collect, according to UCC terms and conditions (Uniform Commercial Code). Load out fee paid. | | | | | | |
| | Prime HDG, ASTM A 653, Cs Type B, item 1 G-30, item 2 G-40 coating, min spangle, chem treat dry, 20" ID, I.D., C/W 14-23000 LBS.  Seaworthy package | | | | | | |
| 01 | .0270" min x 48" | 0.00 | 6 | 59.990 | 132,255 | 40.80 | 53,960.10 |
| 02 | .0435" min x 48" | 0.00 | 12 | 106.220 | 234,175 | 40.10 | 93,904.07 |
| | DOCK RECEIPTS: 88293, 88284, 88285, 88283, 88278, 88250, 88251, 88260, 88261 | | | | | | |
| **TOTAL** | | 0.00 | 18 | 166.210 | 366,430 | | $147,864.17 |

## PLEASE REMIT TO:

LOCKBOX REMITTANCE ADDRESS:

    SALZGITTER MANNESMANN
    INTERNATIONAL (USA), INC.
    P.O. Box 3107
    Carol Stream, IL 60132-3107

WIRE TRANSFERS:

    BANK NAME:  SOCIETE GENERALE
    ACCOUNT #:  189383
    ABA #:  026004226
    ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC.

S0014050

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE. INCLUDING ALL REMITTANCES. MILL WEIGHTS ARE FINAL.  ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE.  NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

## TERMS AND CONDITIONS OF SALE

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1.  **TERMS PARAMOUNT**: The contract between Purchaser and Seller shall be solely as defined hereby, together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2.  **WARRANTY**: SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS. THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3.  **QUANTITY**: Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4.  **PARTIAL SHIPMENTS**: Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5.  **RISK OF LOSS**: Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6.  **IMPORT DUTY AND TAXES**: If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

7.  **Cost of Insurance and Transportation**: If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8.  **DELAY IN OR NON-SHIPMENT**: If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

    (a)  Seller shall not be liable therefore and,

    (b)  Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9.  **DEVIATION**: If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10. **CLAIMS**: (a) Shortages – All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

    (b) Damaged or Defective Material–All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

    All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

    In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

    In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for Internal sweating on wrapped steel. Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11. **SELLER'S REMEDIES**: In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, until cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12. **PURCHASER'S REMEDIES**: Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13. **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time. Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** Failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY:** Any legally invalid provision hereof shall be considered severable.

21. **FORCE MAJEURE** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT 3-E

# EXHIBIT 3-E



# SALZGITTER MANNESMANN INTERNATIONAL

A Member of the Salzgitter Group

## INVOICE

**Salzgitter Mannesmann International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| | |
|---|---|
| Invoice No. | 24677 |
| Date | 1/12/07 |
| Due Date | 2/11/07 |
| Order No | SCH-07151 |

Page    1

| BILL TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>4542 Baldwin Ave.<br>Montgomery, AL 36108 | Southeastern Stud & Components<br>CPU @ PACORINI USA<br>NEW ORLEANS, LA |

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | | VESSEL |
|---|---|---|---|---|
| 1496 | SCH-07151 | 30 days from date of invoice | VESSEL | TOP RICH |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC -loaded truck, Pacorini USA Inc. freight collect, according to UCC terms and conditions (Uniform Commercial Code). Load out fee paid. | | | | | | |
| | Prime HDG, ASTM A 653, Cs Type B, item 1 G-30, item 2 G-40 coating, min spangle, chem treat dry, 20" ID, I.D., C/W 14-23000 LBS. Seaworthy package | | | | | | |
| 01 | .0270" min x 48" | 0.00 | 7 | 61.480 | 135,540 | 40.80 | 55,300.34 |
| 02 | .0435" min x 48" | 0.00 | 3 | 25.240 | 55,645 | 40.10 | 22,313.49 |
| | DOCK RECEIPTS: 88371, 88369, 88333, 88427, 88448 | | | | | | |
| **TOTAL** | | 0.00 | 10 | 86.720 | 191,185 | | **$77,613.83** |

PLEASE REMIT TO:

LOCKBOX REMITTANCE ADDRESS:

    SALZGITTER MANNESMANN
    INTERNATIONAL (USA), INC.
    P.O. Box 3107
    Carol Stream, IL 60132-3107

WIRE TRANSFERS:

    BANK NAME:  SOCIETE GENERALE
    ACCOUNT #:  189383
    ABA #:  026004226
    ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC.

S0014058

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE INCLUDING ALL REMITTANCES. MILL WEIGHTS ARE FINAL. ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE. NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

## TERMS AND CONDITIONS OF SALE

( These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1   TERMS PARAMOUNT  The contract between Purchaser and Seller shall be solely as defined hereby, together with all of the documents or attachments referenced herein except as it may be modified by changes hereto.  In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail.  Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller.  This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry, or purchase order or any other documents which are contrary to or in addition to the conditions set forth herein.

2   WARRANTY:  SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS: THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3   QUANTITY: Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity.  Where material is sold on an actual weight basis, mill weights shall be conclusive.

4   PARTIAL SHIPMENTS: Unless otherwise specified, Seller shall have the right to make partial shipments.  Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5   RISK OF LOSS: Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6   IMPORT DUTY AND TAXES: If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract.  If duty is determined by value, it shall be based upon Seller's cost.  If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser.  In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

7   **Cost of Insurance and Transportation:** If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract.  If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8   DELAY IN OR NON-SHIPMENT: If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

    (a)   Seller shall not be liable therefore and,
    (b)   Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days.  If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party.  In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9   DEVIATION: If after the material has been shipped, its arrival at the destination port is delayed or prevented, or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and/or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10   CLAIMS: (a) Shortages - All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser.  All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier.  Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

     (b) Damaged or Defective Material–All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

     All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence.  In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

     In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance.  Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages.  Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

     In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for internal sweating on wrapped steel.  Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11   SELLER'S REMEDIES: In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately for Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price.  In the case of any deficiency, Purchaser shall remain liable therefore.  Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12   PURCHASER'S REMEDIES: Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance.  Seller shall not be liable for any consequential or special damages.

13. **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2") at percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY:** Any legally invalid provision hereof shall be considered severable.

21. **FORCE MAJEURE.** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT 3-F

# EXHIBIT 3-F



SALZGITTER
MANNESMANN
INTERNATIONAL
A Member of the Salzgitter Group

## INVOICE

**Salzgitter Mannesmann
International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| | |
|---|---|
| Invoice No | 24840 |
| Date | 2/8/07 |
| Due Date | 3/10/07 |
| Order No | SCH-07256 |

Page    1

| BILL TO: | SHIP TO: |
|---|---|
| **Southeastern Stud & Components**<br>4542 Baldwin Ave.<br>Montgomery, AL 36108 | **Southeastern Stud & Components**<br>CPU @ EMPIRE STEVEDORING<br>NEW ORLEANS, LA |

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | VESSEL | |
|---|---|---|---|---|
| 1414 | SCH-07256 | 30 days from date of invoice | VESSEL  MYRON N | |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC -loaded truck, Empire Stevedoring,  according to UCC terms and conditions (Uniform Commercial Code).  Load out fee paid. | | | | | | |
| | Prime HDG, ASTM A 653, Cs Type B,  G-30, coating, min spangle, chem treat dry, 20" ID, I.D., C/W 14-23000 LBS.   Seaworthy package. | | | | | | |
| 01 | .0165" min x 48" | 0.00 | 2 | 16.300 | 35,935 | 42.15 | 15,146.73 |
| | DOCK RECEIPT: 24 | | | | | | |
| **TOTAL** | | 0.00 | 2 | 16.300 | 35,935 | | **$15,146.73** |

**PLEASE REMIT TO:**

LOCKBOX REMITTANCE ADDRESS:

    SALZGITTER MANNESMANN
    INTERNATIONAL (USA). INC
    P O. Box 3107
    Carol Stream. IL 60132-3107

WIRE TRANSFERS:

    BANK NAME:  SOCIETE GENERALE
    ACCOUNT #:  189383
    ABA #:  028004226
    ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC.

*S0014233*

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE, INCLUDING ALL REMITTANCES. MILL WEIGHTS ARE FINAL.  ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE.  NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

**TERMS AND CONDITIONS OF SALE**

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1. **TERMS PARAMOUNT:** The contract between Purchaser and Seller shall be solely as defined hereby together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2. **WARRANTY: SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS: THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.**

3. **QUANTITY:** Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4. **PARTIAL SHIPMENTS:** Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5. **RISK OF LOSS:** Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6. **IMPORT DUTY AND TAXES:** If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

7. **Cost of Insurance and Transportation:** If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8. **DELAY IN OR NON-SHIPMENT:** If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

   (a)   Seller shall not be liable therefore and,
   (b)   Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9. **DEVIATION:** If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10. **CLAIMS:** (a) Shortages – All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

   (b) Damaged or Defective Material–All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

   All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

   In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

   In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for internal sweating on wrapped steel. Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11. **SELLER'S REMEDIES:** In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12. **PURCHASER'S REMEDIES:** Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13  INTEREST DUE ON LATE PAYMENT: If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS: Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt.  Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller  Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15  SECURITY INTEREST: Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser

16  MODIFICATIONS: The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17  NON-WAIVER OF TERMS: failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have.  The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof  Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. REPRESENTATIONS: Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. ASSIGNMENT: This contract may not be assigned without the written agreement of the parties.

20  SEVERABILITY: Any legally invalid provision hereof shall be considered severable

21  FORCE MAJEURE  Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. GOVERNING LAW: The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America

23. ARBITRATION: Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT 3-G

# EXHIBIT 3-G



## SALZGITTER MANNESMANN INTERNATIONAL

A Member of the Salzgitter Group

### INVOICE

**Salzgitter Mannesmann International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston, TX 77056-3499
Phone: (713) 386-7900
Fax: (713) 965-9330

| Invoice No. | 25501 |
|---|---|
| Date | 4/30/07 |
| Due Date | 4/30/07 |
| Order No | SCH-07515 |

Page   1

| BILL TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>4542 Baldwin Ave.<br>Montgomery, AL 36108 | Southeastern Stud & Components<br>CPU @ EMPIRE STEVEDORING<br>NEW ORLEANS, LA     OPY |

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | VESSEL | |
|---|---|---|---|---|
| 12306 | SCH-07515 | Cash in Advance | VESSEL | AFRICAN HAWK 164/06 |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC - loaded truck, Empire Stevedoring, New Orleans, La. per UCC (uniform commercial code) terms and conditions. | | | | | | |
| | Prime hot dipped galvanized coils, CS Type, B, G-40, min spangle, chem treat dry, 20" ID, max c/w 13,000- 23,000lbs. Invoicing on actual net weight basis. | | | | | | |
| 01 | .0435" min x 48.375"<br>PO 12306 | 0.00 | 2 | 13.500 | 29,762 | 34.10 | 10,148.97 |
| | **TOTAL** | 0.00 | 2 | 13.500 | 29,762 | | $10,148.97 |

**PLEASE REMIT TO:**

LOCKBOX REMITTANCE ADDRESS:

    SALZGITTER MANNESMANN
    INTERNATIONAL (USA), INC.
    P.O. Box 3107
    Carol Stream, IL 60132-3107

WIRE TRANSFERS:

    BANK NAME:  SOCIETE GENERALE
    ACCOUNT #:  189383
    ABA #:  026004226
    ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC.

S0014832

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE, INCLUDING ALL REMITTANCES.  MILL WEIGHTS ARE FINAL.  ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE.  NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

## TERMS AND CONDITIONS OF SALE

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1. **TERMS PARAMOUNT** The contract between Purchaser and Seller shall be solely as defined hereby together with all of the documents or attachments referenced herein except as it may be modified by changes hereto. In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail. Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller. This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2. **WARRANTY: SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS: THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.**

3. **QUANTITY:** Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity. Where material is sold on an actual weight basis, mill weights shall be conclusive.

4. **PARTIAL SHIPMENTS:** Unless otherwise specified, Seller shall have the right to make partial shipments. Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5. **RISK OF LOSS:** Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6. **IMPORT DUTY AND TAXES:** If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost. If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

**Cost of Insurance and Transportation:** If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract. If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8. **DELAY IN OR NON-SHIPMENT:** If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

   (a)   Seller shall not be liable therefore and,

   (b)   Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days. If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9. **DEVIATION:** If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10. **CLAIMS:** (a) Shortages—All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser. All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier. Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

   (b) Damaged or Defective Material—All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

   All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

   In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance. Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages. Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

   In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for internal sweating on wrapped steel. Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11. **SELLER'S REMEDIES:** In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price. In the case of any deficiency, Purchaser shall remain liable therefore. Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12. **PURCHASER'S REMEDIES:** Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance. Seller shall not be liable for any consequential or special damages.

13. **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY:** Any legally invalid provision hereof shall be considered severable.

21. **FORCE MAJEURE** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling, order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT  3-H

# EXHIBIT  3-H



# SALZGITTER MANNESMANN INTERNATIONAL

A Member of the Salzgitter Group

## INVOICE

**Salzgitter Mannesmann
International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3498
Phone: (713) 386-7900
Fax: (713) 965-9330

| Invoice No. | 25549 |
|---|---|
| Date | 5/8/07 |
| Due Date | 5/8/07 |
| Order No | SCH-07515 |

Page 1

| BILL TO: | SHIP TO: |
|---|---|
| Southeastern Stud & Components<br>4542 Baldwin Ave.<br>Montgomery, AL 36108 | Southeastern Stud & Components<br>CPU @ EMPIRE STEVEDORING<br>NEW ORLEANS, LA     COPY |

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | VESSEL | | |
|---|---|---|---|---|---|
| 1496 | SCH-07515 | Cash in Advance | VESSEL | AFRICAN HAWK | |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/CWT | USD |
|---|---|---|---|---|---|---|---|
| | OFC - LOADED TRUCK, EMPIRE STEVEDORING, NEW ORLEANS, LA. PER UCC (UNIFORM COMMERCIAL CODE) TERMS AND CONDITIONS. | | | | | | |
| | Prime hot dipped galvanized coils, CS Type, B,  G-40, min spangle, chem treat dry, 20" ID, max c/w 13,000- 23,000lbs.  Invoicing on actual net weight basis. | | | | | | |
| | MATERIAL PAID FOR IN ADVANCE | | | | | | |
| 02 | .0435" min x 48"<br>PO 1496 | 0.00 | 2 | 19.590 | 43,189 | 37.60 | 16,238.88 |
| | PARENT ORDER CH-06781 | | | | | | |
| **TOTAL** | | 0.00 | 2 | 19.590 | 43,189 | | **$16,238.88** |

## PLEASE REMIT TO:

**LOCKBOX REMITTANCE ADDRESS:**

SALZGITTER MANNESMANN
INTERNATIONAL (USA), INC.
P.O. Box 3107
Carol Stream, IL 60132-3107

**WIRE TRANSFERS:**

BANK NAME: SOCIETE GENERALE
ACCOUNT #: 189383
ABA #: 026004226
ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC.

S0014874

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE, INCLUDING ALL REMITTANCES. MILL WEIGHTS ARE FINAL. ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE. NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

**TERMS AND CONDITIONS OF SALE**

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1   **TERMS PARAMOUNT**: The contract between Purchaser and Seller shall be solely as defined hereby, together with all of the documents or attachments referenced herein except as it may be modified by changes hereto.  In the event of any conflict between the terms of the contract as defined hereby and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail.  Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller.  This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary or in addition to the conditions set forth herein.

2   **WARRANTY**: SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS.  THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3   **QUANTITY**: Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity.  Where material is sold on an actual weight basis, mill weights shall be conclusive.

4   **PARTIAL SHIPMENTS**: Unless otherwise specified, Seller shall have the right to make partial shipments.  Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5   **RISK OF LOSS**: Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6   **IMPORT DUTY AND TAXES**: If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract.  If duty is determined by value, it shall be based upon Seller's cost.  If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser.  In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

**Cost of Insurance and Transportation**: If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract.  If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8   **DELAY IN OR NON-SHIPMENT**: If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

   (a)   Seller shall not be liable therefore and,
   (b)   Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days.  If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party.  In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9   **DEVIATION**: If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller.

10   **CLAIMS**: (a) Shortages - All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser.  All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier.  Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

   (b) Damaged or Defective Material–All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

All claims must be made by registered or certified mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence.  In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance.  Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages.  Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for internal sweating on wrapped steel.  Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11   **SELLER'S REMEDIES**: In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price.  In the case of any deficiency, Purchaser shall remain liable therefore.  Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12   **PURCHASER'S REMEDIES**: Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance.  Seller shall not be liable for any consequential or special damages.

13. **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14. **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Such action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material if and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15. **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16. **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17. **NON-WAIVER OF TERMS:** failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18. **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19. **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20. **SEVERABILITY:** Any legally invalid provision hereof shall be considered severable.

21. **FORCE MAJEURE:** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling, order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22. **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23. **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

# EXHIBIT 3-I

# EXHIBIT 3-I



**SALZGITTER MANNESMANN INTERNATIONAL**

A Member of the Salzgitter Group

## DEBIT MEMO

**Salzgitter Mannesmann
International (USA), Inc.**
1770 St. James Place, Ste. 500
Houston , TX 77056-3498
Phone: (713) 386-7900
Fax: (713) 965-9330

| Invoice No. | DN24764 |
|---|---|
| Date | 1/29/07 |
| Due Date | 1/29/07 |

Page    1

| BILL TO: | SHIP TO: |
|---|---|
| **Southeastern Stud & Components**<br>4542 Baldwin Ave.<br>Montgomery, AL  36108 | **Southeastern Stud & Components**<br>LA |

| CUSTOMER P.O. NO. | ORDER NO. | TERMS | | VESSEL | |
|---|---|---|---|---|---|
| 1357 | SCH06188 | Due Upon Receipt | | VESSEL   MV AKILI | |

| ITEM | DESCRIPTION | FEET | UNITS | MTS | LBS | USD/MT | USD |
|---|---|---|---|---|---|---|---|

We debit your account for interest at 1% + Prime per our agreement in Chicago on invoice #23647 dated 9/12/06.

Please see attached...

| TOTAL | $4,590.32 |
|---|---|

PLEASE REMIT TO:

LOCKBOX REMITTANCE ADDRESS:

SALZGITTER MANNESMANN
INTERNATIONAL (USA), INC.
P.O. Box 3107
Carol Stream, IL 60132-3107

WIRE TRANSFERS:

BANK NAME:  SOCIETE GENERALE
ACCOUNT #:  189383
ABA #:  026004226
ACCOUNT NAME: SALZGITTER MANNESMANN INTERNATIONAL (USA), INC.

*DMSCH06188*

OUR ORDER NUMBER AND THE INVOICE NUMBER MUST BE INCLUDED ON ALL RELATED CORRESPONDENCE CONCERNING THE INVOICE, INCLUDING ALL REMITTANCES. MILL WEIGHTS ARE FINAL.  ATMOSPHERIC RUST ON UNPACKED MATERIALS IS NOT CLAIMABLE.  NO CLAIMS ACCEPTED AFTER 30 DAYS OF RECEIPT OF MATERIAL.

**TERMS AND CONDITIONS OF SALE**

(These attached terms and conditions are an integral part of the contract and supersede any and all other terms and conditions that have been presented by Purchaser)

1.  TERMS PARAMOUNT: The contract between Purchaser and Seller shall be solely as defined hereby, together with all of the documents or attachments referenced herein except as it may be modified by changes hereto.  In the event of any conflict between the terms of the contract as defined hereby, and the terms of the Purchaser's purchase order, letter of credit or other document incidental to this contract, the terms set forth herein shall prevail.  Any conditions or exceptions which may be stated in any communication or document received by Seller from Purchaser shall be of no effect unless specifically agreed to in writing by Seller.  This Sales Confirmation constitutes notice of objection to any conditions in Purchaser's inquiry or purchase order or any other documents which are contrary to or in addition to the conditions set forth herein.

2.  WARRANTY: SELLER WARRANTS THAT ALL MATERIAL CONFORMS TO CONTRACT SPECIFICATIONS; THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE, WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE OF THE CONTRACT.

3.  QUANTITY: Unless otherwise specified, Seller may deliver and Purchaser will accept up to ten (10%) percent more or less than the contract quantity.  Where material is sold on an actual weight basis, mill weights shall be conclusive.

4.  PARTIAL SHIPMENTS: Unless otherwise specified, Seller shall have the right to make partial shipments.  Each partial shipment shall be deemed a separate sale and payment shall become due therefore in accordance with the terms of payment.

5.  RISK OF LOSS: Purchaser shall bear all risk of loss or damage to or destruction of the material covered hereby from after delivery at the point of delivery stipulated in the contract, unless otherwise expressly provided.

6.  IMPORT DUTY AND TAXES: If the contract calls for Seller to pay duty on imported material, and only in such case, Seller shall pay the amount of United States import duty at the rates stated in the Tariff Schedules of the United States in effect on the date of the contract. If duty is determined by value, it shall be based upon Seller's cost.  If the total amount of duties (regular and special), at any time, required to be paid is for any reason whatsoever greater (or less) than this amount, the difference shall be charged (or credited) to Purchaser. In the event that any new or increased U.S. Federal, State or local taxes, however denominated are imposed upon the imported material after the date of the contract, such new or increased taxes shall be for the account of and charged to Purchaser.

7.  Cost of Insurance and Transportation: If the contract provides that Seller shall pay insurance and transportation costs, they shall be at the applicable rates in effect at the date of the contract.  If for any reason the cost of insurance or transportation increases prior to the shipment date, such increases shall be for the account of and charged to Purchaser.

8.  DELAY IN OR NON-SHIPMENT: If for any reason beyond the control of Seller or of Seller's supplier shipment is not made within the time specified:

    (a)  Seller shall not be liable therefore and,
    (b)  Unless otherwise agreed, the time for shipment shall be extended for a period of ninety (90) days, and Purchaser, if payment is to be made by letter of credit, shall extend such letter of credit for ninety (90) days.  If shipment is not made within such extended ninety (90) day period, the contract shall be deemed to be cancelled by mutual consent and without liability to either party. In no event shall Seller be liable for consequential or special damages for delay in or non-shipment of any material under this contract.

9.  DEVIATION: If after the material has been shipped, its arrival at the destination port is delayed or prevented; or the vessel is deviated to a different port for reasons beyond Seller's control, the Seller shall advise the Purchaser of any such delay and or deviation within a reasonable time and shall cooperate with the Purchaser to get the material to the Purchaser's original destination stipulated by the accepted contract, without prejudice or liability to the Seller

10.  CLAIMS: (a) Shortages - All claims for shortages in deliveries must be made promptly after receipt of the material by Purchaser.  All claims for shortages must be supported by documentary evidence in the form of exceptions taken on delivery receipt (however denominated) furnished by Purchaser to the delivering carrier.  Failure to take such exceptions at time of delivery shall constitute an absolute bar to any claim.

     (b) Damaged or Defective Material–All claims of damaged or defective material are barred unless reported in writing by Purchaser to Seller, with full particulars, promptly after the damage was or reasonably should have been discovered, and full facilities are offered Seller and its insurer for inspection and investigation.

     All claims must be made by registered or certified  mail, or courier, must state with particularity the defect or damage complained of and must be supported by documentary evidence. In no event may any claim be made more than thirty (30) days after material is received by Purchaser or thirty (30) days after the defect or damage reasonably should have been discovered.

     In the event that a timely and bona fide claim is made with respect to damaged or defective material, Purchaser shall be entitled, at Seller's sole and exclusive option, to replacement of the material, refund of any purchase price paid therefore or an allowance.   Seller shall not be otherwise liable for such damaged or defective material or its use or for consequential or special damages.  Purchaser's obligation to accept and make payment on time for the balance of the material delivered or to be delivered under the contract shall not be affected thereby.

     In case of a dispute as to whether material meets contract specifications, Seller or Purchaser may designate a mutually acceptable independent testing company and/or surveyor to make an examination and in such case said testing Company's and/or surveyor's findings shall be conclusive and binding on both parties (the expense of which examination shall be borne by Seller with respect to each item found not to conform to specifications and by Purchaser with respect to each item found to conform to specifications). Seller shall not be responsible for inherent vice, such as atmospheric rust if steel is ordered without wrapping, and for Internal sweating on wrapped steel. Seller shall not be deemed to have knowledge of the intended ultimate purchase or use of any of the material.

11.  SELLER'S REMEDIES: In the event that Purchaser fails to perform its obligations, Seller, at its option, may cancel the contract and recover from Purchaser its damages, including its expenses, mill cancellation fees and the difference between the contract price and the lesser of Seller's cost or the market price at point of delivery, or Seller may dispose of the material publicly or privately from Purchaser's account and apply the net proceeds, after deducting expenses of disposition, against the purchase price.  In the case of any deficiency, Purchaser shall remain liable therefore.  Seller's expenses in either case shall include reasonable attorney's fees and other costs of enforcing its rights.

12.  PURCHASER'S REMEDIES:  Except as otherwise provided herein, failure of Seller to entitle Purchaser, at Seller's sole and exclusive option, to replacement of material shipped, refund of any purchase price paid therefore or an allowance.  Seller shall not be liable for any consequential or special damages.

13  **INTEREST DUE ON LATE PAYMENT:** If payment is not made on time, Seller, in addition to its other legal rights, shall be entitled to interest at the highest rate allowed by law, or at a minimum, which shall equal prime as published in the Wall Street Journal, plus two (2%) percent.

14  **SUSPENSION OF FUTURE SHIPMENTS – CHANGE OF CREDIT TERMS:** Purchaser hereby represents that it is solvent and Purchaser's signing of any delivery receipt (however denominated) furnished by Purchaser to the delivering carrier shall constitute a further representation of solvency at the time of signing such receipt. Seller shall have the right to withhold shipment of any portion of the material covered by this contract or any other existing contract between Seller and Purchaser, in the event Purchaser fails to make payment when due under any contract between Purchaser and Seller. Said action on the part of Seller shall not release Purchaser from its obligation to accept and pay for such remaining portion of material it and when shipped by Seller, such remaining portion of material if and when shipped by Seller.

If at any time there is a change in the financial conditions or structure of Purchaser, arising from a change in business or market conditions or otherwise, or arising from a merger, reorganization or other change in business form, or if Purchaser becomes insolvent, makes an assignment for the benefit of creditors, or a petition in bankruptcy with respect to Purchaser is filed, or if any lien, arising from judicial process or otherwise, is placed upon any material asset of Purchaser, or if Purchaser breaches any provisions hereof, then Seller shall have the right to cancel the contract, including but not limited to requiring the payment of cash in advance of delivery.

15  **SECURITY INTEREST:** Purchaser grants Seller a security interest in all property of Purchaser now or hereafter in Seller's possession or control and Seller may hold such property as security for payment of all obligations due to Seller and may dispose of such property at private sale to satisfy amounts owed to Seller by Purchaser.

16  **MODIFICATIONS:** The contract constitutes the entire agreement between the parties and no modification shall be effective unless agreed to in writing.

17  **NON-WAIVER OF TERMS:** failure of Seller to insist upon strict performance of any terms and conditions hereof shall not be deemed a waiver of any rights Seller may have. The shipping or receiving of any material shall not be deemed a waiver of any rights concerning a failure by Purchaser to comply with any provision hereof. Waiver by Seller of any provision hereof shall not constitute a waiver as to any other provision, and shall not affect the right of Seller to exercise thereafter any right or remedy in the event of any other default whether similar or not.

18.  **REPRESENTATIONS:** Purchaser and Seller agree that no representations have been made or relied upon, except as specifically stated herein.

19.  **ASSIGNMENT:** This contract may not be assigned without the written agreement of the parties.

20  **SEVERABILITY:** Any legally invalid provision hereof shall be considered severable.

21  **FORCE MAJEURE** Seller shall be relieved from performance of its obligations, promises, covenants or warranties hereunder due to inability to perform in whole or in part as a result of force majeure, which shall include without limitation compliance with any law, ordinance, regulation, ruling order or other governmental action, judicial decree or treaty (including embargo, wage or price control, or rationing or allocation of services or commodities), or due to acts of God, fire, flood, war, sabotage, accidents, labor disputes, shortage or failure of supply of transportation, supply of materials or equipment, interruption of or delay in communications or transportation, or any other circumstances of like nature beyond the reasonable control of Seller.

22  **GOVERNING LAW:** The contract between Purchaser and Seller as defined by this Sales confirmation shall be governed by the laws of the State of Texas, United States of America.

23  **ARBITRATION:** Any controversy or claims arising out of said contract, or the breach thereof, shall be determined by arbitration in Houston, Harris County, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

Rev 2/04

# EXHIBIT  B

# EXHIBIT  B

# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF ALABAMA

**SALZGITTER MANNESMANN
INTERNATIONAL (USA), INC.,**

   **Plaintiff,**

**V.**

**SOUTHEASTERN STUD &
COMPONENTS, INC.,**

   **Defendant.**

**CASE NO. CV-2:07-CV-764-MHT**

## DEFENDANT'S RESPONSE TO
## PLAINTIFF'S REQUESTS FOR ADMISSION TO DEFENDANT

COMES NOW, Defendant Southeastern Stud & Components, Inc., in the above styled

cause, and responds to the Plaintiff's Request for Admissions to Defendant, bearing a service

date of December 20, 2007 as follows:

### GENERAL OBJECTIONS

Defendant objects to each of the Plaintiff's discovery requests to the extent that they are

overly broad, vague, unduly burdensome, seek information not designed nor reasonably

calculated to the discovery of relevant evidence; and, purport to request information protected by

the attorney/client privilege or the work-product doctrine or seeks information taken and/or

prepared in anticipation of litigation, or privileged, not subject to discovery or which otherwise

are impermissible subjects of discovery under the rules of civil procedure.

Defendant further objects to each discovery request to the extent each seeks documents or

things that constitute confidential, proprietary information or to which Defendant has a duty or

obligation of confidentiality with respect to persons or entities not parties to this litigation. This

objection is made specifically, but without limitation, with respect to any request that entails

disclosure of the identities or other confidential information of persons not parties to this litigation, whose privacy rights would be violated by such disclosure.

1. On or about April 16, 2006, Southeastern Stud issued to Plaintiff a purchase order designated P.O. #1357.

RESPONSE: The Defendant is unable to verify the date, however, a purchase order was issued with the number 1357, therefore, this item is admitted as to the purchase order number only.

2. On or about September 20, 2006, Plaintiff made available to Southeastern Stud certain steel products referenced in your P.O. #1357.

RESPONSE: The Defendant is without sufficient knowledge or information to either admit or deny the factual basis of this request and it is therefore denied.

3. On or about May 11, 2006, Southeastern Stud issued to Plaintiff a purchase order designated P.O. #1414.

RESPONSE: Admitted

4. On or about September 17, 2006, the vessel Myron N arrived in New Orleans, LA, carrying certain steel products referenced in your P.O. #1414.

- 2 -

RESPONSE: The Defendant is unable to verify the date nor the vessel referenced, however, at least a portion of the steel products under the instant purchase order was either picked up or delivered to the Defendant, therefore, this request for admission is admitted in part and denied in part.

5. On or about July 13, 2006, Southeastern Stud issued to Plaintiff a purchase order designated P.O. #1496.

RESPONSE: Admitted

6. On or about October 7, 2006, the vessel Top Rich arrived in New Orleans carrying certain steel products referenced in your P.O. #1496.

RESPONSE: The Defendant is unable to verify the date nor the vessel referenced, however, at least a portion of the steel products under the instant purchase order was either picked up or delivered to the Defendant, therefore, this request for admission is admitted in part and denied in part.

7. On or about January 1, 2006, Southeastern Stud issued to Plaintiff a purchase order designated P.O. #012306-1 or P.O. #sd-012306-1.

RESPONSE: The Defendant is unable to verify the date, however, a purchase order was issued with a number of 012306-1 and 1033 and this may be the same purchase order referenced in this

request for admission, however, without further information, the Defendant is without sufficient knowledge or information to either admit or deny the factual basis of this request and it is therefore denied.

8. On or about October 25, 2006, Plaintiff made available to defendant certain steel products referenced in your P.O. #sd-012306-1.

RESPONSE: The Defendant is unable to verify the date, however, at least a portion of the steel products under the instant purchase order (012306-1 and 1033) was either picked up or delivered to the Defendant, therefore, this request for admission is admitted in part and denied in part.

9. On or about December 21, 2006, Southeastern Stud or your representative requested Plaintiff make available to you certain steel products referenced in your P.O. #1414.

RESPONSE: The Defendant is without sufficient knowledge or information sufficient to either admit or deny the factual basis of this request and it is therefore denied.

10. On or about February 2, 2007, Plaintiff made available to Southeastern Stud certain steel products referenced in your P.O. #1414.

RESPONSE: The Defendant is without sufficient knowledge or information sufficient to either admit or deny the factual basis of this request and it is therefore denied.

- 4 -

11. On or about April 25, 2007, Southeastern Stud or your representative requested

Plaintiff make available to you certain steel products referenced in your P.O. #sd-012306 and

P.O. #1496.

RESPONSE: The Defendant is without sufficient knowledge or information sufficient to either

admit or deny the factual basis of this request and it is therefore denied.

12. Southeastern Stud has, to date, paid only $46,387.91 towards Invoice No. 24446,

attached hereto as Exhibit A.

RESPONSE: The Defendant is without sufficient knowledge or information sufficient to form a

belief as to the truth of this request and it is therefore denied.

13. Southeastern Stud has, to date, paid only $20,000.00 towards Invoice No. 24605,

attached hereto as Exhibit B.

RESPONSE: Admitted

14. Southeastern Stud has, to date, not paid any amounts towards Invoice No. 24646,

attached hereto as Exhibit C.

RESPONSE: Admitted

15. Southeastern Stud has, to date, not paid any amounts towards Invoice No. 24648,

attached hereto as Exhibit D.

RESPONSE: Admitted

16. Southeastern Stud has, to date, not paid any amounts towards Invoice No. 24677, attached hereto as Exhibit E.

RESPONSE: Admitted

17. Southeastern Stud has, to date, not paid any amounts towards Invoice No. 24840, attached hereto as Exhibit F.

RESPONSE: Admitted

18. Southeastern Stud has, to date, not paid any amounts towards Invoice No. 25501, attached hereto as Exhibit G.

RESPONSE: The Defendant is without sufficient knowledge or information sufficient to form a belief as to the truth of this request and it is therefore denied.

DOCUMENTS: Pursuant to Rule 36, Plaintiff requests that Defendant admit or deny the truth, authenticity, and correctness of the following documents as detailed below and, if denied, state

the basis for denial:

1.  The four purchase orders designated P.O. #1357, P.O. #1414; P.O. #1496, and P.O. #sd-012306-1, attached hereto as Exhibit H.

RESPONSE: Admitted

2.  The four order confirmations, attached hereto as Exhibit I, and referencing those purchase orders designated P.O. #1357, P.O. #1414; P.O. #1496, and P.O. #sd-012306-1.

RESPONSE: Admitted

Respectfully submitted on this the 1st day of February 2008.

Southeastern Stud &
Components, Inc.

By: _____
Nancy K. Thornton

Its:   Controller

**STATE OF ALABAMA**

**COUNTY OF MONTGOMERY**

I, the undersigned, a Notary Public in and for County in said State, hereby certify that Nancy K. Thornton whose name as Controller of **Southeastern Stud & Components, Inc.**, a corporation, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

GIVEN under my hand this 1st day of February 2008.

Notary Public

(SEAL)

My commission expires:

THIS INSTRUMENT WAS PREPARED BY:

Memory & Day
P.O. Box 4054
Montgomery, AL 36013
Tel (334) 834-8000
Fax (334) 834-8001
vgmemory@memorylegal.com
jlday@memorylegal.com

- 8 -