IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SALZGITTER MANNESMANN INTERNATIONAL (USA) INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.: 2:07cv764-MHT |
| SOUTHEASTERN STUD & COMPONENTS, INC., | ) ) ) ) | |
| Defendant. | ) | |

**MOTION FOR LEAVE TO FILE REPLY BRIEF**

Plaintiff Salzgitter Mannesmann International (USA) Inc. ("Salzgitter") moves the Court for leave to file a reply brief in support of its Motion for Summary Judgment. In support of its Motion for leave, Plaintiff states as follows:

1. Salzgitter has moved this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

2. On April 7, 2008, the Court entered an Order setting Salzgitter's motion for submission on April 25, 2008, with any opposing brief due on that date.

3. On Friday, April 25, 2008, Defendant Southeastern Stud & Components, Inc. ("Southeastern Stud") filed an opposition to the Motion for Summary Judgment.

4. While the Court's April 7, 2008 Order did not specifically address consideration of a reply brief, Salzgitter believes the Court's consideration of the Motion for Summary Judgment would be aided by such a submission.

WHEREFORE, Salzgitter respectfully requests leave of the Court to file a reply brief in support of its Motion for Summary Judgment. Should the Court deem it appropriate to grant such leave, Salzgitter's proposed Reply Brief in Support of Motion for Summary Judgment is attached to this Motion as **Attachment 1**.

 s/ J. Forrest Hinton
J. FORREST HINTON
STACEY A. DAVIS
J. ELLIOTT WALTHALL

Attorneys for Plaintiff Salzgitter
Mannesmann International (USA) Inc.

OF COUNSEL:

BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, PC
Wachovia Tower
420 20th Street North, Suite 1600
Birmingham, Alabama  35203
Telephone (205) 328-0480
Facsimile  (205) 322-8007

# CERTIFICATE OF SERVICE

I hereby certify that on this April 30, 2008, the foregoing was served by electronic mail via the Court's CM/ECF system on the following:

James L. Day
Von G. Memory
469 South McDonough Street
Montgomery, Alabama  36103-4054
Telephone (334) 834-8000
Facsimile  (334) 834-8001

                           s/ J. Forrest Hinton
                           Of Counsel

# Attachment 1

# Attachment 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SALZGITTER MANNESMANN INTERNATIONAL (USA) INC., | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No.: 2:07cv764-MHT<br>) |
| SOUTHEASTERN STUD & COMPONENTS, INC., | )<br>)<br>)<br>) |
| Defendant. | ) |

**REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Salzgitter Mannesmann International (USA) Inc. ("Salzgitter") has moved this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In further support of its Motion for Summary Judgment, and in reply to the opposition filed by Defendant Southeastern Stud & Components, Inc. ("Southeastern Stud"), Salzgitter offers this reply brief.

Salzgitter is entitled to summary judgment because Southeastern Stud has failed to meet its burden of demonstrating a genuine issue of material fact, and because Salzgitter is entitled to judgment as a matter of law. The arguments raised in Southeastern Stud's Response to Plaintiff's Motion for Summary Judgment (the "Response") are immaterial to Salzgitter's claims and thereby raise no issue of material fact precluding summary judgment.

Salzgitter seeks to recover the price of the goods (i.e., steel) that Southeastern Stud accepted and for which it has not paid. Southeastern Stud does not controvert the material facts asserted by Salzgitter, and admits those facts that prove Salzgitter's claim. (*See* Doc. 30, p. 8. "Southeastern [Stud] admits that it may owe Salzgitter for steel delivered and used in the

manufacturing process."). Southeastern Stud attempts, instead, to muddy the waters by manufacturing issues of non-acceptance and "cover" transactions, and by claiming – for the first time – offsetting damages, despite never having advanced any counterclaim or affirmative defense on that score. These assertions are immaterial to Salzgitter's claim, or any valid defense, and amount to nothing more than a smokescreen.[1]

### RESPONSE TO DEFENDANT'S STATEMENT OF "UNDISPUTED FACTS"

Southeastern Stud makes no attempt to address directly the undisputed facts set out in Salzgitter's Brief in Support of Motion for Summary Judgment. Upon examination, no material assertion made by Salzgitter is controverted by Southeastern Stud in its Response. Although Southeastern Stud raises an issue regarding the timeliness of Salzgitter's delivery of the goods, this issue is rendered immaterial by Southeastern Stud's admitted acceptance of the goods without notifying Salzgitter of a breach or ever asserting a claim or affirmative defense, as demonstrated below. For the convenience of the Court, Salzgitter attaches to this brief **Exhibit A**, wherein Salzgitter individually addresses each factual assertion made by Southeastern Stud, and demonstrates that there is no issue of contested material fact precluding summary judgment.

### ARGUMENT

Southeastern Stud does not contest that it accepted steel delivered by Salzgitter, for which it has not paid. (*See* Response, Doc. 30, p. 8). Salzgitter's Complaint seeks to recover the price of the goods accepted. See TEXAS BUS. & COM. CODE ANN. § 2.709(a). Because Salzgitter's

---

[1] Southeastern Stud also raises the issue of the arbitration provision contained in the documents controlling the parties' transactions. Southeastern Stud raised this issue for the very first time in its Motion to Compel Arbitration filed on April 22, 2008 (Doc. 28). As will be more fully developed in an Opposition to that Motion, which Salzgitter will separately file with the Court, Southeastern Stud has participated in this litigation for nearly a year, and should not now be permitted to assert an arbitration provision such a short time before the scheduled trial date. Southeastern Stud has waived any right associated with the provision.

claims do not include "cover" damages, Southeastern Stud's assertions in that regard are immaterial. While Southeastern Stud now seeks to raise what is tantamount to a counterclaim based on alleged untimely delivery of the goods (Doc. 30, pp. 7-8), any such remedy is now barred under applicable commercial law for failure to give proper notice, as well as under procedural law, for failure to assert such counterclaims or affirmative defenses in its responsive pleading. The Court is presented with no issue of contested material fact, therefore, and summary judgment is due to be granted.

> A. **Southeastern Stud's Assertions Regarding "Cover" Are Immaterial to Salzgitter's Claim for the Price of Accepted Goods.**

Salzgitter's claims in this action essentially seek recovery of the price of goods Southeastern Stud admittedly accepted, and are unaffected by Southeastern Stud's assertions regarding cover transactions. Under Texas commercial law, "[w]hen the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages . . . the price . . . of goods accepted . . . ." TEXAS BUS. & COM. CODE ANN. § 2.709(a). As Salzgitter's Complaint and Motion for Summary Judgment and supporting material make clear, this is the remedy Salzgitter has pursued. Salzgitter has not sought damages based on any undelivered or unaccepted goods that may have been sold to third parties. Southeastern Stud's assertions in that regard are, therefore, immaterial.

Southeastern Stud not only admits accepting steel delivered by Salzgitter (for which Salzgitter seeks recovery) but also admits owing Salzgitter for that steel. (*See* Doc. 30, p. 8). Southeastern Stud attempts to cloud the issue by asserting that Salzgitter has entered into cover transactions, mitigating its damages. (*Id.*). Salzgitter's claims and damages have nothing to do with cover transactions. See TEXAS BUS. & COM. CODE ANN. § 2.709(a). Salzgitter has never

sought damages related to any goods that may have been wrongfully rejected or undelivered due to non-payment. What Salzgitter did with *unaccepted* goods is immaterial to this case.

Because Salzgitter seeks only the amounts invoiced to Southeastern Stud for accepted steel, Southeastern Stud has failed to raise an issue of material fact precluding summary judgment.

### B. Southeastern Stud Is Barred, Substantively and Procedurally, From Raising Any Damages Claims.

Along with its assertions regarding cover by Salzgitter, Southeastern Stud argues in its Response that Salzgitter's recovery "should be offset by the costs to Southeastern [Stud] for damages due to its attempt to cover Salzgitter's failure to make a timely delivery." (Doc. 30, p. 8). Because Southeastern Stud has never before raised any such claim or issue, it is now barred by both substantive and procedural law. Any facts related to such claims are therefore immaterial to this dispute.

#### 1. Any damages claim by Southeastern Stud is barred by failure to give notice as required by statute.

Southeastern Stud's damages claim is barred by to its failure to notify Salzgitter of any breach as required by the Texas Business and Commerce Code. *See* TEXAS BUS. & COM. CODE ANN. §§ 2.714, 2.607. The statute provides that a buyer accepting goods must give notification under Section 2.607 in order to recover any "damages for non-conformity of tender." *Id.* at § 2.714(a). Section 2.607 provides that: "Where a tender has been accepted, the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach **or be barred from any remedy**." *Id.* at § 2.607(c) (emphasis added).

Southeastern Stud has not formally alleged or proven that it gave notice as required by the Texas statute. Southeastern Stud never gave such notice and failed to raise any claim of late

delivery in its answer in this action, or anywhere else. Moreover, to the extent Southeastern Stud's Response itself constitutes notice of an alleged breach, Texas courts have ruled that notice so long after acceptance is unreasonable as a matter of law. *See, e.g., Southerland v. Northeast Datsun, Inc.*, 659 S.W. 2d 889, 893 (Tex. App. Ct. 1983). By the express terms of the Texas Business and Commerce Code, therefore, any remedy Southeastern Stud might have had for alleged late delivery is now barred.

> **2.    Southeastern Stud is barred by Fed. R. Civ. P. 13 from raising damages claims.**

Until its recent Response, nowhere in Southeastern Stud's pleadings has it asserted, as a claim or affirmative defense, that it is entitled to damages or to an offset for any breach by Salzgitter. Any such claim must be considered a compulsory counterclaim under Fed. R. Civ. P. 13, which Southeastern Stud has waived by neglecting to raise prior to this time.

Rule 13 of the Federal Rules of Civil Procedure provides that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party if its arises out of the transaction of occurrence that is the subject matter of the opposing party's claim." Under the Rules, "[c]ompulsory counterclaims which are not brought are 'thereafter barred.'" *See, e.g., Nippon Credit Bank Lim. V. Mathews*, 291 F. 3d 738, 755 (11th Cir. 2002) (*quoting* Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n. 1 (1974)).

Southeastern Stud's damages claim arises from the same transaction as Salzgitter's claims, and would be a compulsory counterclaim under Rule 13. Yet Southeastern Stud failed to assert them as either a counterclaim or affirmative defense. As such, Southeastern Stud has failed to properly plead any such claim under Rule 13, and is therefore barred from asserting it at this late stage of the proceedings.

Southeastern Stud's assertion of damages caused by Salzgitter's alleged breach, in the form of late delivery of the goods, is barred by the applicable substantive and procedural law. As such, these fatally dilatory arguments do not raise issues of material fact, and Salzgitter is entitled to judgment as a matter of law.

## CONCLUSION

Southeastern Stud's response raises no issue of material fact precluding summary judgment. Southeastern Stud admits the facts critical to Salzgitter's claim and the additional facts raised are immaterial to this case. Because Southeastern Stud has accepted goods for which it has not paid, Salzgitter is entitled, as a matter of law, to judgment in the amount of the purchase price.

    s/ J. Forrest Hinton
J. FORREST HINTON
STACEY A. DAVIS
J. ELLIOTT WALTHALL

Attorneys for Plaintiff Salzgitter
Mannesmann International (USA) Inc.

OF COUNSEL:

BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, PC
Wachovia Tower
420 20th Street North, Suite 1600
Birmingham, Alabama 35203
Telephone (205) 328-0480
Facsimile (205) 322-8007

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of _____, 2008, the foregoing was served by electronic mail via the Court's CM/ECF system on the following:

James L. Day
Von G. Memory
469 South McDonough Street
Montgomery, Alabama 36103-4054
Telephone (334) 834-8000
Facsimile (334) 834-8001

                                                   s/ J. Forrest Hinton
                                                   Of Counsel

- 7 -

# EXHIBIT A

# EXHIBIT A

# EXHIBIT A

## SALTZGITTER'S RESPONSES TO "UNDISPUTED FACTS" OF SOUTHEASTERN STUD

**Undisputed Fact #1:** Southeastern Stud & Components, Inc., is a manufacturer and assembler of steel components used in construction. The facilities of Southeastern Stud & Components, Inc., are located off the Selma Highway (Hwy 80) in an industrial park, across from the street from the Big Lots warehouse.

**Response**: Uncontested.

**Undisputed Fact #2**: Salzgitter distributes steel and its principal place if business is in Houston, Texas. The steel is manufactured by third-party steel mills.

**Response**: Uncontested.

**Undisputed Fact #3**: In 2003, the parties entered into a series of contracts to supply Southeastern steel coil for a job in New Orleans, Louisiana.

**Response**: Uncontested for purposes of the Motion for Summary Judgment.

**Undisputed Fact #4**: From December 2005 until July 2006, Southeastern made five separate purchases from Salzgitter, as represented by purchase orders numbered: 120905-1, 012306-1, 1357, 1414, and 1496.

**Response:** Uncontested for purposes of the Motion for Summary Judgment.

**Undisputed Fact #5**: The steel from these purchase orders was intended for production of steel framing studs and ultimate use in commercial construction contracts.

**Response**: Uncontested for purposes of the Motion for Summary Judgment, but this assertion is entirely immaterial to any claim or defense of the parties.

**Undisputed Fact #6**: The five Salzgitter orders noted above were originally requested for delivery and specific sequencing, on average, 6-8 weeks apart.

**Response**: Uncontested for purposes of the Motion for Summary Judgment.

**Undisputed Fact #7**: The quantity and dollar value of each order was specifically planned to be approximately the same so that each order would be paid for and processed by Southeastern by the time the next order arrived.

**Response**: Uncontested for purposes of the Motion for Summary Judgment, but this assertion is entirely immaterial to any claim or defense of the parties.

**Undisputed Fact #8**: Southeastern paid for delivery by drawing against a one million dollar line of credit ($1,000,000.00). Sequencing of delivery allowed Southeastern to keep the running balance on this line of credit below $1,000,000.00.

**Response**: Uncontested for purposes of the Motion for Summary Judgment, but this assertion is entirely immaterial to any claim or defense of the parties.

**Undisputed Fact #9**: Further, the sequenced timing of the deliveries would insure a smooth production flow and provide proper timing to the end users.

**Response:** Uncontested for the purposes of the Motion for Summary Judgment, but this assertion is entirely immaterial to any claim or defense of the parties.

**Undisputed Fact #10:** Under purchase order 120905-1, placed December 9, 2005, Southeastern ordered 1,983,000 pounds of steel, with a requested delivery date of April 1, 2[00]6. This steel was delivered 31 days late, May 2, 2006.

**Response:** Salzgitter does not contest that this purchase order was placed, but it is not at issue in Salzgitter's Complaint. There is no dispute that the steel in this shipment was delivered and paid for. The assertion regarding delivery is immaterial because Southeastern Stud accepted the goods, never notified Salzgitter of any breach, and has never before asserted any claim or defense based on late delivery.

**Undisputed Fact #11:** Under purchase order 012306-1, placed January 23, 2006, Southeastern ordered 1,874,000 pounds of steel, with a requested delivery date of May 1, 2006. Of the total order, 555,000 pounds of the steel was delivered 92 days late, August 1, 2006; 929,000 pounds of steel was delivered 143 days late, September 21, 2006, and the remaining 373,000 was delivered 183 days late, October 31, 2006.

**Response:** Uncontested for purposes of the Motion for Summary Judgment, but this assertion regarding delivery is immaterial because Southeastern Stud accepted the goods, never notified Salzgitter of any breach, and has never before asserted any claim or defense based on late delivery.

**Undisputed Fact #12:** Under purchase order 1357, placed April 18, 2006, Southeastern ordered 1,874,000 pounds of steel, with a requested delivery date of July 31, 2006. The steel was delivered 49 days late, September 18, 2006.

**Response:** Salzgitter does not contest that this purchase order was placed, but it is not at issue in Salzgitter's Complaint. There is no dispute that the steel in this shipment was delivered and paid for. The assertion regarding delivery is immaterial because Southeastern Stud accepted the goods, never notified Salzgitter of any breach, and has never before asserted any claim or defense based on late delivery.

**Undisputed Fact #13:** Under purchase order 1414, placed May 11, 2006, Southeastern ordered 1,653,000 pounds of steel, with a requested delivery date of September 15, 2006. The steel, to include an additional 44,000 pounds, was delivered 5 days late, September 20, 2006.

**Response:** Uncontested for purposes of the Motion for Summary Judgment, but this assertion regarding delivery is immaterial because Southeastern Stud accepted the goods, never notified Salzgitter of any breach, and has never before asserted any claim or defense based on late delivery.

**Undisputed Fact #14:** Under purchase order 1496, placed July 13, 2006, Southeastern ordered 1,764,000 pounds of steel, with a requested delivery date of November 15, 2006. The steel was delivered 32 days early, October 14, 2006.

**Response:** Uncontested for purposes of the Motion for Summary Judgment, but this assertion regarding delivery is immaterial because Southeastern Stud accepted the goods, never

notified Salzgitter of any breach, and has never before asserted any claim or defense based on late delivery.

**Undisputed Fact #15:** Salzgitter performed all aspects of the contract except the expected delivery date.

**Response:** Southeastern Stud does not contest that Salzgitter fully performed under the contract, except with regard to the timing of delivery. The assertion regarding delivery is immaterial, however, because Southeastern Stud accepted the goods, never notified Salzgitter of any breach, and has never before asserted any claim or defense based on late delivery.

**Undisputed Fact #16:** The net result was that in a space of less than 90 days Salzgitter delivered, to the port of New Orleans, approximately $2,500,000.00 of product on an allowed line of credit of approximately $1,000[,0]00.00.

**Response:** Uncontested for purposes of the Motion for Summary Judgment, but this assertion is entirely immaterial to any claim or defense of the parties because Southeastern Stud accepted the goods, never notified Salzgitter of any breach, and has never before asserted any claim or defense based on late delivery.

**Undisputed Fact #17:** Moreover, the referenced shipments came at a time when the building market had virtually collapsed and orders and shipments were significantly reduced to customers or end users by Southeastern.

**Response:** Uncontested for purposes of the Motion for Summary Judgment, but this assertion is entirely immaterial to any claim or defense of the parties because Southeastern Stud

- 6 -

accepted the goods, never notified Salzgitter of any breach, and has never before asserted any claim or defense based on late delivery.