IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **SALZGITTER MANNESMANN (U.S.A.), INC.,** <br><br> Plaintiff, <br><br> v. <br><br> **SOUTHEASTERN STUD and COMPONENT, INC.,** <br><br> Defendant. | **Case Number 07-764-MHT** |

**DEFENDANT'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

Defendant, Southeastern Stud & Components, Inc. ("Southeastern"), hereby submits its proposed findings of fact and conclusions of law:

**I. Findings of Fact**

1. Southeastern Stud & Components, Inc., is a manufacturer and assembler of steel components used in construction. The facilities of Southeastern Stud & Components, Inc., are located off the Selma Highway (Hwy 80) in an industrial park, across the street from the Big Lots warehouse.

2. Salzgitter distributes steel and its principal place of business is in Houston, Texas. The steel is manufactured by third-party steel mills.

3. In 2003, the parties entered into a series of contracts to supply Southeastern steel coil for a job in New Orleans, Louisiana.

4. From December 2005 until July 2006, Southeastern made five separate purchases from Salzgitter, as represented by purchase orders numbered: 120905-1, 012306-1, 1357, 1414, and 1496.

5. The steel from these purchase orders was intended for production of steel framing studs and ultimate use in commercial construction contracts.

6. The five Salzgitter orders noted above were originally requested for delivery and specific sequencing, on average, 6-8 weeks apart.

7. The quantity and dollar value of each order was specifically planned to be approximately the same so that each order would be paid for and processed by Southeastern by the time the next order arrived.

8. Southeastern paid for delivery by drawing against a one million dollar line of credit ($1,000,000.00). Sequencing of delivery allowed Southeastern to keep the running balance on this line of credit below $1,000,000.00.

9. Further, the sequenced timing of the deliveries would insure a smooth production flow and provide proper timing to the end users.

10. Under purchase order 120905-1, placed December 9, 2005, Southeastern ordered 1,983,000 pounds of steel, with a requested delivery date of April 1, 2—6. The steel was delivered 31 days late, May 2, 2006.

11. Under purchase order 012306-1, placed January 23, 2006, Southeastern ordered 1,874,000 pounds of steel, with a requested delivery date of May 1, 2006. Of the total order, 555,000 pounds of the steel was delivered 92 days late, August 1, 2006; 929,000 pounds of steel was delivered 143 days late, September 21, 2006, and the remaining 373,000 was delivered 183 days late, October 31, 2006.

12. Under purchase order 1357, placed April 18, 2006, Southeastern ordered 1,874,000 pounds of steel, with a requested delivery date of July 31, 2006. The steel was delivered <u>49</u> days late, September 18, 2006.

13. Under purchase order 1414, placed May 11, 2006, Southeastern ordered 1,653,000 pounds of steel, with a requested delivery date of September 15, 2006. The steel, to include an additional 44,000 pounds, was delivered <u>5</u> days late, September 20, 2006.

14. Under purchase order 1496, placed July 13, 2006, Southeastern ordered 1,764,000 pounds of steel, with a requested delivery date of November 15, 2006. The steel was delivered <u>32</u> days early, October 14, 2006.

15. Salzgitter performed all aspects of the contract except the expected delivery date.

16. The net result was that in a space of less than 90 days Salzgitter delivered, to the port of New Orleans, approximately $2,500,000.00 of product on an allowed line of credit of approximately $1,000.00.00.  Moreover, the referenced shipments came at a time when the building market had virtually collapsed and orders and shipments were significantly reduced to customers or end users by Southeastern.

## II. CONCLUSIONS OF LAW

1. The choice of law provision is valid and enforceable. The Commercial Code of the State of Texas (V.T.C.A., Bus. & C.) applies.

2. <u>V.T.C.A., Bus. & C. §2.106</u>, The transaction was a valid contract or contract for sale. "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time.  A "sale" consists in the passing of title from the seller to the buyer for a price (Section 2.401).  A "present sale" means a sale which is accomplished by the making of the contract.

Goods or conduct including any part of a performance are "conforming" or conform to the contract when they are in accordance with the obligations under the contract.

    3. <u>V.T.C.A., Bus. & C. § 2.309</u>. In the absence of specific time provisions, the time for shipment or delivery or any other action under a contract if not provided…or agreed upon shall be a reasonable time. Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.

    4. <u>V.T.C.A., Bus. & C. § 2.601</u>. If the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may (1) reject the whole; or (2) accept the whole; or (3) accept any commercial unit or units and reject the rest.

    5. <u>V.T.C.A., Bus. & C. § 2.606</u>. Acceptance of goods occurs when the buyer (1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or (2) fails to make an effective rejection (Subsection (a) of Section 2.602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or (3) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him. (b) Acceptance of a part of any commercial unit is acceptance of that entire unit.

    6. <u>V.T.C.A., Bus. & C. § 2.713</u>. The measure of damages for non-delivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this chapter (Section 2.715), but less expenses saved in consequence of the seller's breach. Market price is to be determined as of the place for tender or, in cases of rejection after arrival or revocation of acceptance, as of the place of arrival.

      7.  <u>V.T.C.A., Bus. & C. § 2.714</u>. Where the buyer has accepted goods and given notification he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable. The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. In a proper case any incidental and consequential damages under the next section may also be recovered.

      8.  <u>V.T.C.A., Bus. & C. § 2.715</u>.  Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach. Consequential damages resulting from the seller's breach include (1)  any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise;  and (2) injury to person or property proximately resulting from any breach of warranty.

      9.  A written arbitration provision is enforceable under The Federal Arbitration Act ("FAA") in "a contract evidencing a transaction involving commerce", 9 U.S.C.A. § 2. The FAA defines commerce as "commerce among the several states," 9 U.S.C.A. § 1.

      10. As a general matter of federal policy, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,'" <u>Stinson v.</u>

America's Home Place, Inc., 108 F.Supp.2d 1278, at 1281 (M.D.Ala.,2000) citing: AT& T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 651, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (reviewing dispute arising under the Labor Management Relations Act); see also Ruby-Collins, Inc. v. City of Huntsville, Alabama, 748 F.2d 573, 576 (11th Cir.1984) ("[F]ederal policy requires that we construe arbitration clauses generously, resolving all doubts in favor of arbitration."); Seaboard Coast Line Railroad Co. v. Trailer Train Co., 690 F.2d 1343, 1348 (11th Cir.1982) (same).

    11. Section 4 also provides that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," a federal court should grant the petition, 9 U.S.C.A. § 4.

    Respectfully submitted on this the 21st day of August 2008.

    Memory & Day

By: /S/ James L. Day
James L. Day
ASB-1256-A55J

Von G. Memory
ASB-8137-071V

Attorneys for Defendant

OF COUNSEL

Memory & Day
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001
Email   vgmemory@memorylegal.com
       jlday@memorylegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☒ placing same in the United States Mail, postage prepaid, and properly addressed

☐ facsimile

☐ hand delivery

☐ delivered in open court

on August 21, 2008.

J. Forrest Hinton Jr., Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz
420 20th St N Ste 1600
Birmingham, AL 35203-5202

Stacey A Davis, Esq.
Baker Donelson Bearman Caldwell & Berkowitz, PC
420 20th Street North
Wachovia Tower, Suite 1600
Birmingham, AL 35203

James Elliott Walthall, Esq.
Baker Donelson Bearman Caldwell & Berkowitz PC
420 20th Street North, Suite 1600
Wachovia Tower
Birmingham, AL 35203-5202

/S/ James L. Day
James L. Day